**UNITED STATES of America**

v.

**Jerry A. GARNER, Gunnery Sergeant (E-7), U.S. Marine Corps.**

**NMCCA 200800481.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 4 April 2008.

19 May 2009.

For Appellant: LCDR Thomas Belsky, JAGC, USN.

For Appellee: Maj Tai Le, USMC, 1st Lt. Eric P. Winkefsky, USMCR.

Before GEISER, Senior Judge, KELLY, and BOOKER, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

GEISER, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of attempting to communicate indecent language to a child under the age of 16 years, and of violating 18 U.S.C. § 2422(b) by attempting to persuade, entice, and induce [1] a minor to engage in intercourse and oral sodomy, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934. The approved sentence was confinement for 12 months, reduction to pay grade E–1, and a dishonorable discharge.

The appellant asserted two assignments of error, and we specified three additional issues for briefing by the parties. The appellant first asserts that his plea to attempting to entice a minor to engage in illegal sexual activity was improvident because he did not undertake a "substantial step." Secondly, the appellant avers that his pleas to both charges were improvident because he had a substantial misunderstanding as to his maximum sentence.[2] The issues specified by the court were as follows: (1) whether the appellant was properly apprised of the theory of liability under which he was pleading guilty; [3] (2) whether words alone are sufficient to satisfy the "substantial step" element of attempting to entice a minor to engage in illegal sexual activity if they amount to "grooming," [4] and (3) whether the appellant's charges constituted an unreasonable multiplication of charges.

After considering the record of trial, the pleadings of the parties, and the oral argument, we conclude that the charges were multiplicious for sentencing. We will reassess the sentence. Following our action, we conclude that the findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ.

### Background

The appellant engaged in on-line conversations in a Yahoo! Messenger chat room with an individual using the screen name "molly14summers" ("Molly"), from 24 September until 23 October 2007. Record at 30; Prosecution Exhibit 1. The appellant had 11 different conversations with "Molly" which collectively lasted nearly 17 hours. PE 1. At all relevant times the appellant believed "Molly" to be a 14–year–old girl. Record at 34. In reality, "Molly" was an adult undercover police officer. *Id.* at 34, 38.

The appellant's conversations with "Molly" initially involved inappropriate flattery and solicitation of general background information. Very quickly, however, the appellant's comments turned to sexually explicit matters including exchanges of pictures and video. The appellant repeatedly expressed his desires vis-á-vis "Molly" with increasingly

---

1. We will collectively refer to "persuade, entice, and induce," hereinafter, as simply—"entice."

2. This assignment of error is contingent upon our finding the appellant's pleas to Charge II and its sole specification, improvident. As we find against the appellant, this assignment of error is without merit.

3. After reading the parties' briefs and hearing oral arguments, we rephrased this specified issue to its current language, as it more accurately characterizes the pertinent issue presented by these facts.

4. This specified issue is related to the appellant's first assignment of error, therefore we will address it within our discussion in that section.

graphic sexual statements, to include his desire that they commit sodomy with each other. Record at 42; PE 1 at 27, 29, 55, 57. Throughout these sexually explicit conversations, the appellant's technique of advancing an increasingly explicit sexual agenda, assessing "Molly's" reaction, then reformulating and re-engaging, appears distinctly as manipulation and "grooming." This behavior also included the solicitation of photos from "Molly"—which she provided—and the appellant's transmitting to her a video of himself masturbating. Though there is no specific meeting agreed to in order to consummate the appellant's articulated desires, he did at various times posit that he would go to her house and "nock" (sic) on her door. The appellant was aware of the city and state where "Molly" allegedly lived. When the response from "Molly" was ambiguous, the appellant retrenched to attempt alternative "grooming" conversations. PE 1 at 28–29, 55.

As part of the appellant's providence inquiry, the military judge explained the elements of the various offenses and defined relevant terms. Record at 19–25. The military judge correctly defined the term "substantial step" to be "a direct movement toward the commission of the attended [sic] offense ... [it] is strongly corroborative of your criminal intent and is indicative of your resolve to commit the offense."[5] *Id.* at 19. In the context of 18 U.S.C. § 2422(b), the military judge stated that the alleged act of using the internet must have "amounted to more than mere preparation; that is, it was a substantial step and a direct movement toward the commission of the intended offense of entic-

ing or persuading a minor to engage in illegal sexual [activity]." *Id.* at 24.

In order to provide a factual basis that his communications to "Molly" constituted a "substantial step" to entice her to agree to a sexual encounter, the appellant admitted trying to convince "Molly" to engage in intercourse and oral sodomy. *Id.* at 38. He admitted sending "Molly" a video of his erect penis in an attempt to "get the person at the other end turned on," which, according to the appellant, was "part of the enticing and persuading." *Id.* at 40–41. The appellant acknowledged that everything in the Stipulation of Fact was the truth, and that it contained an accurate recitation of his sexually explicit on-line discussions. *Id.* at 16. The appellant also stipulated that his statements to "Molly" were made "with the purpose of enticing, persuading and inducing a person he thought to be under 18 years of age to engage in sexual intercourse and oral sodomy with him." PE 1 at 4.

## Analysis

■ This is an issue of first impression for this court.[6] We must decide if actions—short of arranging a specific meeting with a purported minor or making travel preparations—may amount to a "substantial step" under § 2422(b).[7] A number of United States Circuit Courts of Appeals have addressed this issue,[8] but not in the context of a guilty plea under Article 45, UCMJ; RULE FOR COURTS-MARTIAL 910, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.); *United States v. Care*, 40 C.M.R. 247, 1969

5. The military judge defined a "substantial step" during his inquiry regarding the appellant's offense of attempted indecent language to a child under 16 years, Article 80, UCMJ.

6. Our court has previously decided that the "substantial step" element of § 2422(b) was satisfied when an appellant promised to buy clothing for the purported minor, *made specific arrangements to meet*, and acknowledged that but for his military obligations he would have gone to the rendezvous. *United States v. Proctor*, No. 200601171, 2007 WL 1724916, 2007 CCA LEXIS 187, unpublished op. (N.M.Ct.Crim.App. 12 Jun 2007).

7. We note that the appellant was not convicted under Clause 3 of Article 134; rather, he was

convicted under Clause 2, conduct of a nature to bring discredit upon the armed forces. Article 134, UCMJ. Despite being a Clause 2 offense under Article 134, due to the fact that this Charge is modeled after 18 U.S.C. § 2422(b) and in the absence of any military case law addressing this particular issue, we look to the United States Circuit Courts of Appeals for guidance in analyzing the "substantial step" element of this offense.

8. *United States v. Gladish*, 536 F.3d 646 (7th Cir.2008); *United States v. Goetzke*, 494 F.3d 1231 (9th Cir.2007)(per curiam); *United States v. Bailey*, 228 F.3d 637 (6th Cir.2000).

WL 6059 (C.M.A.1969); and *United States v. Inabinette,* 66 M.J. 320 (C.A.A.F.2008).

" 'A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion.' " *Inabinette,* 66 M.J. at 322 (quoting *United States v. Eberle,* 44 M.J. 374, 375 (C.M.A.1996)). "We apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law that would raise a substantial question regarding the appellant's guilty plea." *Id.* The appellant "must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson,* 50 M.J. 599, 601 (N.M.Ct.Crim.App.1999); *see also* R.C.M. 910(j). Moreover, "where a plea is first attacked on appeal, we must view the evidence in the light most favorable to the Government." *United States v. Hubbard,* 28 M.J. 203, 209 (C.M.A.1989)(Cox, J., concurring).

The appellant asserts that the military judge committed an abuse of discretion in accepting his guilty plea to violating 18 U.S.C. § 2422(b) because an adequate factual basis does not exist for the "substantial step" element. The appellant relies on *United States v. Gladish* for the proposition that his actions did not constitute a "substantial step" because, consistent with the analysis in *Gladish,* the appellant argues that he did not make specific meeting arrangements or travel preparations. 536 F.3d 646 (7th Cir.2008); Appellant's Brief of 4 Sep 2008 at 9–12. For reasons discussed *infra,* we decline to adopt the Seventh Circuit's "substantial step" analysis for § 2422(b).

We agree that satisfaction of the "substantial step" element in a sting operation for attempting to entice a purported minor to engage in sexual activity under § 2422(b) is met in many cases when an accused actually travels to a designated rendezvous location to meet the purported minor. *United States v. Gagliardi,* 506 F.3d 140, 150 (2d Cir.2007); *United States v. Cote,* 504 F.3d 682, 688 (7th Cir.2007); *United States v. Spurlock,* 495 F.3d 1011, 1012–13 (8th Cir.2007); *United States v. Tykarsky,* 446 F.3d 458, 469 (3d Cir.2006); *United States v. Brand,* 467 F.3d 179, 185–86 (2d Cir.2006), *cert. denied,* 550 U.S. 926, 127 S.Ct. 2150, 167 L.Ed.2d 878 (2007); *United States v. Munro,* 394 F.3d 865, 870 (10th Cir.2005); *United States v. Meek,* 366 F.3d 705, 720 (9th Cir.2004). The court in *Gladish* acknowledges, however, that "[t]ravel is not a *sine qua non* of finding a substantial step in a section 2422(b) case." *Gladish,* 536 F.3d at 649 (citing *Doe v. Smith,* 470 F.3d 331, 345 n. 23 (7th Cir. 2006)).

In *Gladish,* the Seventh Circuit Court of Appeals addressed what, short of travel, might constitute a "substantial step" for attempting to entice a minor to engage in illegal sexual activity under § 2422(b). The Seventh Circuit determined that agreeing on a time and place for a meeting, purchasing a gift, or making other arrangements necessary for travel could also satisfy the "substantial step" element. *Id.* It appears from this, that the Seventh Circuit's primary focus is somewhat narrowly limited to actions above and beyond mere words in an email exchange or to words substantially suggesting a planned real-world meeting. Ultimately, the Seventh Circuit found the substantial step element lacking in *Gladish* because in that case, Gladish "did not indicate that he would travel to northern Indiana to do these things to her in person; nor did he invite her to meet him in southern Indiana or elsewhere." *Id.* at 650. We are unpersuaded by the narrow nature of the Seventh Circuit's reasoning.

In *Brand,* the Second Circuit observed that "[i]n order to establish that a defendant is guilty of an attempt to commit a crime, the government must prove that the defendant had the intent to commit the crime and engaged in conduct amounting to a 'substantial step' towards the commission of the crime." *Brand,* 467 F.3d at 202 (quoting *United States v. Yousef,* 327 F.3d 56, 134 (2d Cir. 2003)). The interplay between the intent and substantial step elements of an attempt under § 2422(b), was addressed in a military context in *United States v. Brooks,* 60 M.J. 495, 499 (C.A.A.F.2005), where the court noted that an appellant satisfies the "substantial step" element with actions that " 'mark his conduct as criminal such that his acts as a whole strongly corroborate the required cul-

pability.' " (quoting *United States v. Murrell,* 368 F.3d 1283, 1288 (11th Cir.2004)). Thus, the intent element of a § 2422(b) attempt offense is inextricably intertwined with the "substantial step" element. This link dictates that the "substantial step" be an act in furtherance of the criminal intent necessary to violate the statute.

The specific intent required to violate § 2422(b) was also addressed by the Court of Appeals for the Armed Forces (CAAF) in *Brooks.* Specifically, CAAF adopted a Sixth Circuit Court of Appeals' view that an accused need not intend that the underlying sexual activity actually take place but only that the accused intend to persuade a minor to engage in such activity. *Brooks,* 60 M.J. at 498 (citing *United States v. Bailey,* 228 F.3d 637, 639 (6th Cir.2000)). This view of the intent requirement of § 2422(b) is shared by the First, Second, Eighth, and Eleventh Circuits.[9] The intent to violate § 2422(b), therefore, is the intent to entice a minor to engage in sexual activity. It is not an intent to actually engage in such activity. This distinction was well-articulated by the Ninth Circuit in *United States v. Goetzke,* 494 F.3d 1231, 1236 (9th Cir.2007), where the court noted that

> Goetzke was charged with attempting to persuade, induce, entice, or coerce W to engage in sexual activity with him—not with attempting to engage in sexual activity with W. The latter is an attempt to achieve the physical act of sex, for which physical proximity is integral. But the former is an attempt to achieve the mental act of assent, for which physical proximity can be probative but is not required.

Therefore, if an attempt crime requires that the "substantial step" be movement in furtherance of the requisite intent to commit the crime, and the intent required by § 2422(b) is to entice a minor to agree to engage in sexual activity, then requiring that in each instance the "substantial step" somehow involve direct physical movement in furtherance of engaging in sexual activity or con-

crete specific steps towards that end is too narrow and limiting a construction. This is where we part ways with the Seventh Circuit's analysis in *Gladish.*

In order to delineate the reasonable limits of what may constitute a "substantial step" under § 2422(b), we are persuaded and guided by the factors outlined by the Ninth Circuit in *Goetzke.* In *Goetzke,* evidence of a "substantial step" under § 2422(b) was held to exist without evidence of specific travel arrangements or meeting location. We are mindful, however, that a key factor in the *Goetzke* analysis was a prior relationship between the accused and the victim which is not present in the instant case. Nonetheless, the *Goetzke* court specifically identified other relevant conduct by the accused such as the defendant's verbal advances of a sexual nature, his suggestions of an exchange of pictures, flattery, carefully crafted incentives, attempts to impress, and advice to the minor about how to sexually stimulate himself. 494 F.3d at 1233–37. The *Goetzke* court, however, was not presented with and did not decide whether an attempt to arrange a meeting is required to constitute a substantial step under § 2422(b).

In the instant case, we are presented with facts that, while not involving actual travel arrangements, specific plans to meet, or a prior relationship, do include many of the other factors articulated in *Goetzke.* For instance, early on in the email exchanges, the appellant offered "Molly" a backrub. PE 1 at 16. During the course of 17 hours of email contact, as "Molly" continued to respond favorably to the appellant's words, the appellant's efforts increased. He made efforts to impress "Molly" by bragging about how much money he made, the size of his house, and the fact that he was a Marine. The appellant continued to groom "Molly" when he suggested and executed multiple exchanges of pictures. *Id.* at 7, 15, 20, 21, 26, 32, 42, 47, 60, 65. In this regard, the appellant specifically suggested nudity in the

---

**9.** Respectively *United States v. Dwinells,* 508 F.3d 63, 65 (1st Cir.2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 2961, 171 L.Ed.2d 892 (2008); *United States v. Brand,* 467 F.3d 179, 202 (2d Cir.2006), *cert. denied,* 550 U.S. 926, 127 S.Ct. 2150, 167 L.Ed.2d 878 (2007); *United States v. Pierson,* 544 F.3d 933, 939 (8th Cir.2008), *petition for cert. filed,* —— U.S. ——, 129 S.Ct. 2431, 174 L.Ed.2d 229 (7 Jan. 2009)(No. 08–8131); and *Murrell,* 368 F.3d at 1286.

pictures and at one point actually obtained a fully-clothed picture from "Molly." He, in turn, sent her a video of himself masturbating. He offered to send a web cam to "Molly" so she could reciprocate. *Id.* at 25, 26–27, 67–69. As their relationship progressed and "Molly" continued to respond favorably; the appellant began to encourage and advise "Molly" about sexually stimulating herself. *Id.* at 13, 23, 35–36, 48, 55–57. As his email seduction progressed, he "flatter[ed]" "Molly," by telling her how "beautiful," "pretty," "hot," and "sexy" she was.[10] *Id.* at 7, 8, 9, 22, 26, 47.

While no single line of email text is sufficient to constitute a "substantial step" in the context of § 2422(b), taken together, the appellant's 17 hours of communication to "Molly" strongly support the appellant's statement during his providence inquiry that he was attempting to persuade "Molly" to engage in a sexual encounter. As the court noted in *Brand,* 467 F.3d at 203, "sharing pictures, flirting, and attempting to gain affection—constituted classic 'grooming' behavior in preparation for a future sexual encounter. 'Child sexual abuse is often effectuated following a period of grooming and the sexualization of the relationship.'" *Id.* (quoting Sana Loue, *Legal and Epidemiological Aspects of Child Maltreatment,* 19 J. LEGAL MED. 471, 479 (1998)). In the instant case, we are satisfied that the appellant's admission that he was working to persuade "Molly" to have sex with him was supported by his progressive grooming efforts. Over a one-month time period, the appellant's contacts with "Molly" encompassed 11 conversations conducted over a period of approximately 17 hours. As previously noted, these began with friendly banter, escalated to sexual conversation, followed by overt attempts to gain her physical cooperation with his requests through the trading of photos and videos, flattery, and other persuasion, with the admitted goal of having her agree to engage in illegal sexual contact with him. PE 1 at 6–65.

Even assuming, *arguendo,* that the appellant's grooming behavior, standing alone, was insufficient to constitute a "substantial step" under § 2422(b), such behavior informs our analysis of the appellant's non-specific references to a future physical meeting. The appellant inquired about "nock[ing] on ["Molly's"] door," "in person." PE 1 at 28. The appellant also referenced "Molly's" "house," and said: "ill (sic) come see you." [11] *Id.* at 29, 55. While the appellant set no definite time and place for a meeting with "Molly," these references taken in the context of his grooming behavior are sufficient to constitute a "substantial step." *Id.* at 28, 55.

We are persuaded that the appellant's "grooming" behavior, to include an expressed suggestion to meet in person, provide an adequate factual basis to support the appellant's guilty plea to attempting to entice a minor to engage in illegal sexual activity under § 2422(b). We, therefore, find that the military judge did not abuse his discretion in accepting the appellant's pleas. We are cognizant of the fact that in this decision we are further refining the case law surrounding the "substantial step" element of § 2422(b). We do not, however, believe that our analysis is inconsistent with existing case law, but rather is a logical and rational extension of it.[12]

---

**10.** While not a fact similar to *Goetzke,* we note that the appellant also advised "Molly" about altering her on-line preferences in order to avoid detection by her "mom." PE 1 at 24; *see United States v. Cochran,* 534 F.3d 631, 632 (7th Cir.2008)(noting the defendant's advice to the purported minor about changing computer preferences when finding sufficient evidence for violating § 2422(b)).

**11.** The appellant and "Molly" were both in North Carolina, the appellant in Jacksonville, and "Molly" in Greensboro, approximately 200 miles apart. PE 1 at 6.

**12.** *See also United States v. Wales,* 127 Fed.Appx. 424, 431 (10th Cir.2005)("through the medium of the chat room, Mr. Wales used flattery, highly charged sexual images, and a false female persona in his quest to obtain images of AngelGirl12yo engaging in masturbation with the possibility that an illicit meeting might occur at a later occasion ...") and *United States v. Gravenhorst,* 190 Fed.Appx. 1, 4 (6th Cir.2006)("our caselaw shows ... that the defendant does not have to get very far along the line toward ultimate commission of the object crime in order to commit the attempt offense"), *cert. denied,* 549 U.S. 1140, 127 S.Ct. 997, 166 L.Ed.2d 752 (2007).

## Theory of Liability

■ We specified the issue of whether the appellant was properly apprised of the theory of liability under which he was pleading, citing *United States v. Medina*, 66 M.J. 21 (C.A.A.F.2008). Under *Medina*, the appellant has a right to know under what legal theory he is pleading guilty. *Id.* at 26. The military judge or the charge sheet must make the accused aware of any alternative theory of guilt. *Id.* at 27. "This fair notice resides at the heart of the plea inquiry." *Id.* at 26.

Prior to arraignment, the trial counsel modified the appellant's charge sheet by adding the language, "which conduct was of a nature to bring discredit upon the armed forces," to the charge of attempting to entice a minor to engage in illegal sexual activity. Record at 8. The appellant made no objection to that change. *See* R.C.M. 603(d). During the plea inquiry, the military judge expressly explained the separate theories of liability under which the appellant was pleading. The appellant acknowledged the military judge's guidance and affirmatively agreed that he had talked to his defense counsel about this issue.

■ Thus, the charge sheet and the military judge's instruction placed the appellant on notice of the alternate theory of liability under Clause 2, "conduct of a nature to bring discredit upon the armed forces." [13] Art. 134, UCMJ. Unlike in Medina, the military judge did not "gratuitously" add the Clause 2 language during the providence inquiry. 66 M.J. at 23. Accordingly, we find that the appellant understood the nature of the offenses to which he pled and the alternate theories of liability. Art. 45, UCMJ; *see also Care*, 40 C.M.R. at 247; R.C.M. 910(c)("the military judge shall address the accused personally and inform the accused of, and determine that the accused understands ... [t]he nature of the offense to which the plea is offered.").

**13.** The appellant asserted that the military judge's explanation that the Clause 2 violation was a "lesser included offense" of the Clause 3 offense, while also explaining that the Clause 2 offense had an "additional element," raised a question about the knowing and voluntary nature of the appellant's plea, citing, *Medina*, 66 M.J. at

## Unreasonable Multiplication of Charges

We also specified the issue of whether charging the appellant with attempted indecent language to a child under 16 years, and attempting to entice that same purported minor to engage in intercourse and sodomy, constituted an unreasonable multiplication of charges. The doctrine of unreasonable multiplication of charges stems from "those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F.2001); *see also* R.C.M. 307(c)(4), Discussion ("What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."). We apply the following five non-exclusive factors in evaluating a potential unreasonable multiplication of charges:

(1) whether the appellant objected at trial that there was an unreasonable multiplication of charges and/or specifications; (2) whether the charges and specifications are aimed at distinctly separate criminal acts; (3) whether the number of charges and specifications misrepresents or exaggerates the appellant's criminality; (4) whether the number of charges and specifications unreasonably increases the appellant's punitive exposure; and (5) whether there is any evidence of prosecutorial overreaching or abuse in drafting of the charges.

*United States v. Campbell*, 66 M.J. 578, 581 (N.M.Ct.Crim.App.2008). "These factors must be balanced, with no single factor necessarily governing the result." *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004).

First, the appellant did not object at trial. While not dispositive, this factor significantly weakens the appellant's position. *Campbell*, 66 M.J. at 581.

25–26. Appellant's Brief of 4 Sep 2008 at 8 n. 1. This need not detain us, however, because the gravamen of *Medina* requires fair notice, and the appellant was placed on notice of the alternate theories of liability by the charge sheet, as well as the military judge's explanation of the various clauses of Article 134, UCMJ.

Second, we observe that both offenses were achieved, at least in part, through use of the exact same explicit language. We view this factor in favor of the appellant.

Third, the charges do not misrepresent or exaggerate the appellant's criminality. While the use of explicit language was common to both offenses, the appellant could have communicated such language for no purpose other than the gratification of doing so. By using the language to affect a greater goal of enticement, the appellant raised the bar of culpability. We view this factor in favor of the Government.

Fourth, the appellant's charges did not unreasonably increase his punitive exposure. The appellant's charge under Article 134, UCMJ, for violating § 2422, carried a maximum punishment of life imprisonment, as well as punishment at the discretion of the court. 18 U.S.C. § 2422(b); MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), Part IV, ¶ 60(a). The attempted indecent language specification carried, *inter alia*, a maximum of two years confinement. Thus the maximum confinement was life imprisonment. We view this factor in favor of the Government.

Finally, no evidence of prosecutorial overreaching or abuse in the drafting of the charges at issue exists, as conceded by the appellant. Appellant's Brief of 15 Jan 2009 at 8. We, therefore, view this factor in favor of the Government.

■ After applying the *Quiroz* factors we find that the appellant's charges were unreasonably multiplied. Specifically we find that the specifications were multiplicious for sentencing purposes. *Quiroz*, 55 M.J. at 339 (holding that in light of R.C.M. 906(b)(12) the doctrine of multiplicity for sentencing exists and is valid until the President revises the Manual). We have reassessed the sentence in accordance with the principles of *United States v. Moffeit*, 63 M.J. 40, 42 (C.A.A.F. 2006); *United States v. Eversole*, 53 M.J. 132, 133 (C.A.A.F.2000); *United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F.1998); *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A. 1990); and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986). We are satisfied that the adjudged sentence for the sole speci-

fication under Charge II would have been at least the same as that adjudged by the military judge and approved by the convening authority.

## Conclusion

Accordingly, the findings and approved sentence are affirmed.

Judge KELLY concurs.

BOOKER, Judge (concurring in the result):

I concur in the court's disposition of the issues before it. As our decision makes clear, the appellant was charged with attempting to *persuade, entice, or induce* "Molly" to engage in sexual activity, not attempting to *engage in* the activity itself, and therefore I concur in the court's analysis of what in this record amounts to substantial steps toward completion of the attempted offense. Although some may see it as a minor point, I take issue with the ease with which practitioners lump together the four verbs in section 2422(b)—"persuade, entice, induce, coerce"—for prosecuting and defending these cases. Each verb has a distinct meaning, and the "substantial step" toward achieving one end—"persuading" a person to engage in an act by thesis, antithesis, and synthesis-may be radically different from the substantial step toward achieving another end—"coercing" a person to engage in an act by threatening blackmail.

I also question the practice of expanding the scope of "clause 1 and clause 2" prosecutions where, as in the appellant's case, there are no jurisdictional difficulties to charging and proving a violation of substantive federal law (including, in this category, all state crimes charged under the Assimilative Crimes Act, 18 U.S.C. § 13). *See United States v. Medina*, 66 M.J. 21, 28 (C.A.A.F. 2008). Practitioners and courts could avoid serious questions regarding the elements of the offenses, and possibly even more serious questions regarding the maximum punishment available for the principal and lesser offenses, by reserving the "alternative theory of liability" technique for those cases where

it is truly needed, not where the criminal code gives a ready vehicle for prosecution.