# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court sitting *En Banc*

**UNITED STATES, Appellee**
**v.**
**Sergeant NICHOLAS R. SCHELL**
**United States Army, Appellant**

ARMY 20110264

Headquarters, U.S. Army Combined Arms Center and Fort Leavenworth
Susan K. Arnold, Military Judge
Colonel Fred P. Taylor, Staff Judge Advocate

For Appellant: Captain Richard M. Gallagher, JA (argued); Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Richard M. Gallagher, JA (on brief & on brief in response to specified issues); Lieutenant Colonel Imogene M. Jamison, JA; Major Richard E. Gorini, JA; Captain Richard M. Gallagher, JA (on supplemental brief); Colonel Patricia A. Ham, JA; Major Richard E. Gorini, JA; Captain Richard M. Gallagher, JA (on reply for supplemental brief).

For Appellee: Major Christopher S. Glascott, JA (argued); Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA; Major Christopher S. Glascott, JA (on brief, brief in response to specified issues & on supplemental brief).

12 September 2012

------------------------------------
OPINION OF THE COURT
------------------------------------

KRAUSS, Judge:

Pursuant to his pleas, a military judge, sitting as a general court-martial, convicted appellant of attempted indecent language and attempted indecent act in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (2006 & Supp. III 2009) [hereinafter UCMJ], and attempted persuasion, inducement, or enticement of a minor to engage in sexual activity that would be criminal under Article 120, UCMJ, by means of the internet, in violation of 18 U.S.C. § 2422(b) (2006) as a violation of Article 134, UCMJ. The military judge sentenced appellant to a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the terms of a

pretrial agreement, the convening authority approved confinement for thirteen months, but otherwise approved the adjudged sentence.

Appellant's case is now before this court for review under Article 66, UCMJ. Appellant initially asserted only that the charge and specification alleging attempted indecent language failed to state an offense for failure to allege a terminal element associated with the offense attempted under Article 134, UCMJ. We specified three issues, in essence: whether Article 80, UCMJ, preempts prosecution of the offense alleged under Article 134, UCMJ; whether appellant raised matter inconsistent with his plea to the same offense, when, in his unsworn statement, he stated that he never intended to do anything with the girl; and whether confinement for life was the correct maximum punishment. Appellant then filed a supplemental assignment of error essentially asserting that the military judge failed to sufficiently discuss with appellant the substantial step necessary to support his guilty plea to the clause three, Article 134, UCMJ, offense at issue.

We have examined the record of trial and considered the briefs and arguments of the parties. Our decision turns on the intent required to support an 18 U.S.C. § 2422(b) conviction for attempting to persuade, induce, or entice a minor to engage in illegal sexual activity.

## BACKGROUND

Sergeant (SGT) Schell had a history of exploiting the internet to identify and locate individuals willing to engage in sexual activity with him. On a number of occasions he was successful, and each of these internet-facilitated sexual encounters involved adults. On the occasion giving rise to the case at hand, SGT Schell believed he was in contact with a fourteen year-old girl going by the name of Taylor. However, it was not a fourteen year-old girl chatting with appellant over the internet, but rather, an adult man and law enforcement agent, posing as a young girl, intent upon catching sexual predators who troll the internet searching for prospective child victims. This led to the charged attempts.

The charged attempt we address here stems from 18 U.S.C. § 2422(b), which states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

2

The military judge defined the elements of this offense as follows:

> That on or between 17 March 2010 and 18 March 2010, at or near Fort Leavenworth, Kansas, that you knowingly attempted to persuade, induce, or entice an individual known to you by the screen name of Joco_cheer_girl and with the given name of [TA], to engage in sexual activity, which if undertaken would constitute a criminal offense under Article 120 of the Uniform Code of Military Justice; that you did so by means of or a facility of interstate commerce, in this case the internet; and that—I'm sorry, going back to Article 120, that that would be a violation of 18 USC, Section 2422, subparagraph Bravo, and additionally, that under the circumstances your conduct was of a nature to bring discredit upon the armed forces.
>
> Service discrediting conduct is conduct which tends to harm the reputation of the service or lower it in the public esteem.
>
> . . . .
>
> . . . [a]nd . . . that you believe that the person you were communicating with was less than 18 years of age.

The judge did not address the elements inherent in such an attempt, those of intent to commit the predicate offense and a substantial step toward commission of that offense.

Appellant's admissions and the stipulation of fact in this case reveal a lurid and graphic internet chat exchange involving sexually explicit language and photos featuring appellant's erect penis. Appellant asked Taylor whether she would allow his girlfriend to perform various sexual acts on her. He stipulated that in order to entice Taylor into performing sexual activity with him and his girlfriend, he described his girlfriend's physical attributes and sexual inclinations. He further stipulated that "[i]n addition to attempting to entice 'Taylor' into committing sexual acts with him, [he] also throws out the idea to see if any of 'Taylor's' friends might want to join them in sexual activity."

Appellant sent Taylor two photographs of his naked erect penis over the internet and hoped she would send him photos of her naked breasts or vagina. He explicitly discussed the act of sexual intercourse and what he wanted to do with her sexually. He further stipulated that "[a]t the time [he] enticed 'Taylor' into sexual activity with him, he believed she actually was a fourteen year-old girl," and that

"[he] attempted to entice 'Taylor' into having sexual intercourse with him, which if he engaged in sexual intercourse with a child under the age of sixteen years, would constitute aggravated sexual assault of a child, a violation of Article 120, U.C.M.J."

Appellant stipulated that "[a]fter assurances by 'Taylor' that [he] would not get into trouble, [he] set up a time and place to meet up for the purposes of engaging in sexual activity with 'Taylor.'" Appellant later cancelled the planned meeting concluding "not tonight maybe another day."

Addressing the defense of entrapment, appellant stipulated that "[he] was predisposed to attempt to entice a fourteen year-old girl to engage in sexual activity with him based on his history of inviting others to engage in sexually deviant behavior with him including multiple partnered sexual activity," and that "[he] was in the Yahoo! Chat room for purposes of finding persons willing to engage in multiple-person sexual-partnered activity when he discovered 'Taylor[,]' who he quickly learned was fourteen years old."

During the providence inquiry, appellant stated, in pertinent part, the following: "My intent was to meet a 14 year old girl, ma'am." "I did take the steps to attempt to persuade, come up with ideas using language that would—that would persuade them and not the other way around, ma'am, and then make her want to have sex with me, ma'am." When asked by the judge "what [he was] trying to induce or persuade Taylor to do," appellant answered: "Commit sexual acts with me or with other individuals, ma'am." The judge continued, "What sort of sexual activity were you trying to persuade her to do?" Appellant responded "To have sexual intercourse with me, ma'am." The judge finally asked "So you were trying to persuade her, a 14 year old girl, to have sexual intercourse with you?" Appellant replied "Correct, ma'am."

Upon completion of the providence inquiry, the military judge asked for the trial counsel's calculation of the maximum punishment authorized in the case. The defense agreed that the maximum included confinement for life and the judge so advised the appellant.

Later, in his unsworn statement, appellant said:

> I never intended to do anything with that girl I thought I was talking to online. That's why I never left post and I did make an excuse not to meet up with her. I don't know why I decided to talk to her like that or why I sent the pictures. When I went online that day I was not looking for a 14 year old girl. I did not know she was 14 until she told me, and then I don't know if I decided to keep talking to her out of boredom or curiosity, ma'am. I do know that

4

> I never intended to act on our discussions, but really there is no excuse for my actions, ma'am.

In his sentencing argument, trial counsel emphasized the need to protect children from the likes of appellant and raised the specter of what would have occurred if 'Taylor' had actually been a fourteen year-old girl. The defense counsel, on the other hand, exploited appellant's unsworn statement and argued that no harm ever would have come to any child because appellant never actually intended to carry through with plans to meet 'Taylor.' The defense counsel also highlighted that appellant neither travelled to meet 'Taylor' nor attempted to contact her again after calling off the meeting discussed.

Defense counsel's argument prompted the following dialogue:

> MJ: Counsel, before I close to deliberate and when we were talking about the elements of the Specification of Charge II this came up and I think it's probably prudent at this point to go ahead and address this, is that there's obviously testimony and argument that Sergeant Schell did not ever leave Fort Leavenworth, but that in my discussions with counsel that they indicated and defense agreed that the offense was—and let me summarize this and you can put your own take on it; that the offense was complete when the enticement happened, the fact that he never acted on it, that what he's charged with is attempting to persuade, induce, or entice this individual to engage in sexual activity and that it's not necessary that he actually drove or followed through or anything like that. Would you agree with that, defense?

> DC: That is correct, Your Honor, and specifically there is case law that does not require a substantial step moving forward to actually commit the offense for which he was enticing for, just that he intended to entice them to commit that offense.

> MJ: Okay, and, government, would you also agree?

> ATC: Yes, Your Honor.

> MJ: Okay, and, Sergeant Schell, do you agree? I would assume that you've discussed this with your counsel that despite the fact that or even in light of the fact that you didn't actually leave Leavenworth, would you agree that

> you committed the offense when you were attempting to persuade or entice her?
>
> ACC: Yes, ma'am.

## LAW AND DISCUSSION

Where an accused, testifying in an unsworn statement, "sets up matter inconsistent with" his plea of guilty, "the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006) (citations omitted); UCMJ art. 45(a); Rule for Court-Martial [hereinafter R.C.M.] 910(h)(2). "A military judge who fails to do so has abused his or her discretion." *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012). Having failed to properly resolve such inconsistency, a substantial basis in law and fact to disapprove any finding of guilty entered upon such plea exists and the court will reverse the conviction at issue. *See* UCMJ, art. 45(a); *Hayes*, 70 M.J. at 458; *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969); *United States v. Estes*, 62 M.J. 544, 548 (Army Ct. Crim. App. 2005).

A plea of guilty to an attempt under 18 U.S.C. § 2422(b) cannot properly be accepted absent admission by the accused, *inter alia*, (1) that he intended to persuade, induce, or entice a minor to engage in sexual activity that would be criminal under the law, by means of the internet, and (2) that he took a substantial step toward such persuasion, inducement, or enticement. *See United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011). A definition for the intent required has yet to be resolved in our jurisdiction. *See id.* at 407–08 (resolving a definition for the substantial step required but leaving open a definition for the requisite intent, reinforced by reference to federal circuit court decisions that define that intent differently, *compare United States v. Young*, 613 F.3d 735, 742–43 (8th Cir. 2010), *and* Eighth Circuit Pattern Jury instructions: Criminal § 6.18.2422B (2012), *with United States v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006)).[1]

---

[1] Though our superior court commented upon the military judge's erroneous instruction as to substantial step in *Winckelmann*, the court made no comment on the military judge's instruction that it was "necessary for the government to prove that the accused intended to engage in some form of unlawful sexual activity." *Winckelmann*, 70 M.J. at 407 n.4; *United States v. Winckelmann*, ARMY 20070243, 2010 WL 4892816, at *5 (Army Ct. Crim. App. 2010). The Court of Appeals for the Armed Forces also previously declined to resolve the definition of the intent element for this offense upon review of a service court decision that we find relied upon a misinterpretation of a previous decision by our superior court. *United States v. Garner*, 69 M.J. 31, 33 (C.A.A.F. 2010); *United States v. Garner*, 67 M.J. 734, 738 (N.M. Ct. Crim. App. 2009) (misinterpreting *United States v. Brooks*, 60 M.J. 495 (C.A.A.F. 2005)). It is also worthy of note that the Air Force and Coast Guard

We hold that the intent element of attempted persuasion, inducement, or enticement requires the accused intend to actually persuade, induce, or entice a minor to actually engage in illegal sexual activity. *See* 18 U.S.C. § 2422(b); *United States v. Shinn*, 681 F.3d 924, 930–31 (8th Cir. 2012); *United States v. Lebowitz*, 676 F.3d 1000, 1013–14 (11th Cir. 2012); *United States v. Lundy*, 676 F.3d 444, 450–52 (5th Cir. 2012); *Young*, 613 F.3d at 742–43; *United States v. Pierson*, 544 F.3d 933, 938–40 (8th Cir. 2008) (illustrating a case where accused does not intend to engage in physical act himself but intends the minor to engage in illegal sexual activity while affirming that persuasion of an actual minor is not required for conviction of attempt under the statute). In short, the accused must intend that the minor, ultimately, actually engage in illegal sexual activity as a result of his persuasion, inducement, or enticement. One who specifically intends to persuade another to do something, expects and intends that something to be done; otherwise he does not actually intend to persuade anyone to do anything.[2] Therefore, we also hold that appellant's unsworn statements made during the sentencing phase of his court-martial, denying that he ever had any intent to do anything with the minor, set up matter inconsistent with his plea requiring disapproval of that finding of guilty in this case. *Hayes*, 70 M.J. at 458.[3]

---

(. . . continued)
Courts of Criminal Appeals have also published opinions involving cases where the military judge defined or discussed the § 2422(b) intent element as requiring the accused to actually intend the illegal sexual activity to occur without comment or criticism of that definition. *United States v. Kowalski*, 69 M.J. 705, 708 (C.G. Ct. Crim. App. 2010), *pet. denied*, 70 M.J. 35 (C.A.A.F. 2011); *United States v. Amador*, 61 M.J. 619, 622–23 (A.F. Ct. Crim. App. 2005), *pet. denied*, 63 M.J. 183 (C.A.A.F. 2006).

[2] Characterization of this as a "double intent" is a misconception. We disagree with the reasoning offered by the Court of Appeals for the First Circuit on the matter and note that its conclusion is based, at least in part, on a misapplication of Eighth Circuit precedent. *See United States v. Dwinells*, 508 F.3d 63, 68–70 (1st Cir. 2007) (citing *United States v. Patten*, 397 F.3d 1100, 1103 (8th Cir. 2005)). *Patten* reflects application of the singular intent we describe above. *Id.* at 1103–04. Intent that illegal sexual activity occur is part and parcel of any attempt to persuade another to engage in illegal sexual activity.

[3] This holding does not contradict *Winckelmann* because a substantial step toward persuasion, inducement, or enticement may be different than a substantial step toward engaging in sex. The inquiry and dialogue in this case exemplify admission of a substantial step sufficient for a § 2422(b) offense, but insufficient for an attempted rape or sexual assault.

The premise upon which the government prosecuted the offense and upon which it sought to secure certain punishment of the accused relied upon the notion that appellant actually intended to engage in sexual activity with a minor. The stipulation of fact and providence inquiry agree in this respect. Disagreement with that proposition came to light only during appellant's unsworn statement and was then amplified by defense counsel's argument on sentence. Though we might glean from the record ultimate agreement on the element of intent, the record effectively only addresses the substantial step element in that respect. Whether the judge failed to effectively resolve an inconsistency relative to intent or whether the parties and court agreed upon an intent contrary to that required, the result is the same.

Some United States Courts of Appeals hold that § 2422(b) does not require the accused to intend for the minor to actually engage in sexual activity, but only that the accused intend for the minor to achieve a certain mental state—that the minor assent to engage in illegal sexual activity. *See, e.g.*, *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012). We decline to adopt such an interpretation as contrary to the plain language of the statute and its legislative history.

The statute makes criminal attempts to persuade a minor to engage in illegal sexual activity. It does not make criminal attempts to persuade children to merely want to engage in sexual activity or to merely gain the assent of the minor for the sake of that assent. It is intended to address those who lure children out to actually engage in illegal sexual activity; it is not intended to address those who simply encourage or incite children to assent to the possibility of illegal sex. It is a luring statute; not a corrupting statute. The legislative history emphasizes the distinction.

Congress enacted the statute to address predatory behavior by adults intent upon exploiting the internet to actually persuade, induce, entice, or coerce children to actually engage in sexual activity:

> With the advent of ever-growing computer technology, law enforcement officials are discovering that criminals roam the Internet just as they roam the streets.
>
> . . . . Recent, highly publicized news accounts in which pedophiles have used the Internet to seduce or persuade children to meet them to engage in sexual activities have sparked vigorous debate about the wonders and perils of the information superhighway. Youths who have agreed to such meetings have been kidnapped, photographed for child pornography, raped, beaten, robbed, and worse.
>
> During the 104th and 105th Congresses, the Subcommittee on Crime held seven hearings on issues related to crimes

against children. At those hearings, the Subcommittee heard testimony from victim parents, child safety advocacy groups, and federal, state and local law enforcement about the nature, threat and best ways to stop pedophiles who prey on innocent children . . . .

H.R. 3494, the "Child Protection and Sexual Predator Punishment Act of 1998," is a response to requests of victim parents and law enforcement to address public safety issues involving the most vulnerable members of our society, our children. H.R. 3494 is the most comprehensive package of new crimes and increased penalties ever developed in response to crimes against children, particularly assaults facilitated by computers. The bill attacks pedophiles who stalk children on the Internet.

H.R. Rep. No. 105–557, at 680–81 (1998).

The attempt and ultimate failure to attach the so-called "contact amendment"[4] to § 2422 further illustrates the fact that this statute is intended to counter sexual predators who use the internet to lure children into illegal sexual activity and not merely to achieve a mental state in the victim. The House of Representatives passed the amendment unanimously, but it was rejected by the Senate.

The legislative history of the amendment states that it would establish:

[A] fine and up to 5 years in prison for anyone who, using the mail or any facility of interstate or foreign commerce,

---

[4] The proposed amendment was to be § 2422(c):

"(c) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States–

(1) knowingly contacts an individual who has not attained the age of 18 years; or

(2) knowingly contacts an individual, who has been represented to the person making the contact as not having attained the age of 18 years;

for the purposes of engaging in any sexual activity, with a person who has not attained the age of 18 years, for which any person may be criminally prosecuted, or attempts to do so, shall be fined under this title or imprisoned not more than 5 years, or both. It is a defense to a prosecution for an offense under this section that the sexual activity is prosecutable only because of the age of the individual contacted, the individual contacted had attained the age of 12 years, and the defendant was not more than 4 years older than the individual contacted."

> or within the special maritime and territorial jurisdiction of the United States knowingly contacts (or attempts to contact) an individual who has not attained the age of 18, or who has been represented to the person making the contact as not having attained the age of 18, for purposes of engaging in criminal sexual activity.

H.R. Rep. No. 105–557, at 687.

The history elaborates upon the perceived necessity of this amendment:

> Under current law,[5] the Federal Government must prove that a pedophile "persuaded, induced, enticed or coerced" a child to engage in a sexual act. This standard allows the criminal to establish a prolonged, intimate and highly destructive relationship with the victim, involving explicit sexual language, without actually violating the law. This new crime . . . establishes a lower penalty for initiating a harmful relationship with a child for the purpose of engaging in illegal sexual activity. [This amendment] also clarifies that this provision is not intended to apply to minors who engage in consensual sexual activity with other minors.

H.R. Rep. No. 105–557, at 687.

The Senate rejected this amendment. To paraphrase one Senator, this amendment would move the law too close to creating a thought crime.[6]

---

[5] Section 2422(b).

[6] "As passed by the House, H.R. 3494 would make it a crime, punishable by up to 5 years' imprisonment, to do nothing more than 'contact' a minor, or even just attempt to 'contact' a minor, for the purpose of engaging in sexual activity. This provision, which would be extremely difficult to enforce and would invite court challenges, does not appear in the Hatch–Leahy–DeWine substitute. In criminal law terms, the act of making contact is not very far along the spectrum of an overt criminal act. Targeting 'attempts' to make contact would be even more like prosecuting a thought crime. It is difficult to see how such a provision would be enforced without inviting significant litigation." 144 Cong. Rec. S12257–01, S12263 (daily ed. Oct. 9, 1998) (statement of Sen. Leahy).

In other words, Congress understood § 2422(b) as requiring more than merely engaging in sexually explicit conversation that engendered, encouraged, or incited the thought of assent to possible sex.  Nor does it make criminal "cybersex."  Indeed, the proposed defense to the offense reveals, again, the evil to be addressed is the specter of actual sexual activity.[7]  As described above, some United States Courts of Appeals, on the other hand, have decided to interpret the statute in a different fashion.[8]

Such an interpretation is unnecessary and inappropriate.  Courts applying the "minor's assent" standard recognize that the evidence of intent will rarely, if ever, fail to establish intent to actually have children engage in illegal sex.  *See, e.g.*, *United States v. Berg*, 640 F.3d 239, 246–53 (7th Cir. 2011); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000).  Perusal of the published cases bears this out.  Indeed, the evidence available to the government in this case, virtually equivalent to appellant's admissions during the guilty plea inquiry, would be sufficient to support a conviction in a contested case for the offense despite any denial by the accused that he never intended to actually engage in any sexual activity with a minor.  *See, e.g.*, *Young,* 613 F.3d at 740, 742–43; *United States v. Patten*, 397 F.3d 1100, 1102–04 (8th Cir. 2005).[9]

---

[7] The simultaneous passage of 18 U.S.C. § 1470 (2006), "Transfer of obscene material to minors," its lesser penalties, and its associated legislative history further reinforces our conclusion that § 2422(b) addresses sexual predators who actually intend illegal sexual activity to occur rather than those who merely gain the assent of a minor.  The proposed contact amendment and § 1470 specifically address Congressional efforts to make criminal those acts that affect the mental state of the child victim ("to entice the child to believe that such sexual activities are 'normal'") but fall short of the intent and act required to establish actual attempts to persuade or induce a minor to engage in illegal sexual activity.   H.R. Rep. No. 105–557, at 688.

[8] *See, e.g., United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011).

[9] The state of the law in the United States Court of Appeals for the Eleventh Circuit exemplifies the lack of any necessity to interpret the statute to focus on assent of the minor rather than the intent of the accused.  In *United States v. Lee,* 603 F.3d 904 (11th Cir. 2010), the court upheld a § 2422(b) conviction applying the "minor's assent" interpretation in a case where the jury actually convicted on the instruction that the government must prove "that the defendant intended to engage in some form of unlawful sexual activity."  *Id.* at 914, 920.  Yet this year, the court affirmed a § 2422(b) conviction based on an interpretation of the statute that required the defendant to actually intend illegal sexual activity occur and did so without reference to *Lee* or any other decision.  *See Lebowitz*, 676 F.3d at 1013–14.  A meaningful distinction between an attempted persuasion, inducement, or enticement

By rejecting an interpretation that focuses on the mental state of the victim, we also avoid excluding from liability those who may employ seemingly innocuous methods to lure a child out to engage in illegal sexual activity. The willingness of the minor victim to engage in sexual activity, or lack thereof, may be probative of the accused's intent, but should not be required to establish the offense. *See, e.g.*, *United States v. Dhingra*, 371 F.3d 557, 567–68 (9th Cir 2004). Indeed, cases may arise where a sexual predator uses the internet to persuade, induce, or entice a minor by promise of something other than sex, never mentioning sex, yet intend nothing other than criminal sexual activity as the purpose of his persuasion.

By maintaining proper focus on the accused's mental state, we also avoid the improper exclusion of those who attempt to induce a minor to engage in illegal sexual activity through a third party without ever attempting to obtain a minor's assent at all. *See Brooks*, 60 M.J. at 498–99. Excluding from liability those who intend to induce a child's unwary entry into a life of prostitution through a third party or lure a child out in order to commit forcible rape, illustrate two possible examples of the potentially absurd consequences associated with basing the question of intent on the mental state of the victim. *See also United States v. Douglas*, 626 F.3d 161 (2d Cir. 2010) (applying a "minor's assent" interpretation in a case involving attempted inducement through an intermediary where the facts revealed appellant's indifference to the assent of the minor as much as any intent to ultimately obtain the minor's assent through a variety of possible means).

In light of the above, we also hold that the preemption doctrine does not prevent prosecution of this offense under clause three of Article 134, UCMJ, and that the maximum punishment is life in confinement under R.C.M. 1003. There is nothing enumerated by Congress under the UCMJ that contemplates the prosecution and conviction of those who lure or attempt to lure children out to engage in illegal sex by means of the internet nor is there any offense closely related to the same.[10]

---

(. . . continued)

and an attempted sexual act does not require an interpretation with focus on assent of the minor. It is plain that one need not prove an attempted rape, for example, in order to prove an attempted enticement of a minor over the internet to engage in what would amount to rape under the law. It is correct to say that "Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves." *Bailey*, 228 F.3d at 639. It is incorrect to say that, therefore, the law does not require the accused to intend to persuade a minor to actually perform sex acts. It only means that the crime is complete with persuasion rather than act and that the attempt is complete with a substantial step towards persuasion rather than a substantial step towards performance of the act.

[10] If we were to embrace the "minor's assent" definition of intent, the indecency crimes defined under Articles 120 and 134, UCMJ, at the time of appellant's trial,

*See United States v. Kowalski*, 69 M.J. 705, 706–07 (C.G. Ct. Crim. App. 2010). Though Congress never contemplated application of this maximum punishment under the UCMJ but rather only contemplated its application within the framework of the federal sentencing guidelines, we are bound to endorse it under the circumstances. R.C.M. 1003(c)(1)(B)(ii) ("An offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable as authorized by the United States Code . . . .").[11]

Though the providency of appellant's plea was not affected by the possibility of an incorrect maximum punishment, and despite the fact that his admissions during that inquiry support a conviction under the definition of intent described above, the inconsistent statements made during his unsworn statement, unresolved at the court-martial, require our reversal of the § 2422(b) conviction. *Hayes*, 70 M.J. at 458. Absent that charge, appellant's maximum possible sentence to confinement is reduced to seven years. We cannot say with confidence that in a case where the maximum was seven years' confinement, rather than confinement for life, appellant would have received at least thirteen months' confinement in this case absent the §

---

(. . . continued)
would constitute closely related offenses requiring a different maximum punishment. *See* R.C.M. 1003(c)(1)(B)(i). Indeed, those indecency crimes directly address those acts intended to change the mental state of a minor on matters of sex under circumstances that warrant criminal sanction. This case exemplifies prosecution, conviction, and punishment for such acts: appellant was convicted of both attempted indecent act with a child and attempted indecent language for the same acts that served as a basis for the § 2422(b) charge. *See, e.g.*, *United States v. King*, 71 M.J. 50 (C.A.A.F. 2012). For offenses alleged after 28 June 2012, the same analysis applies with reference to Articles 120b, 120c, and Article 134, UCMJ, along with preemption issues anew especially in light of Articles 120b(c), (g), and (h)(5)(B),(C), and (D), UCMJ.

[11] Because the UCMJ guarantees individual justice in each case, the convening authority is able to exercise discretion in the disposition of such cases, panels and military judges enjoy the discretion to impose the punishment deemed fit for the particular circumstances of the case, the convening authority may exercise his clemency authority, and, finally, this court may exercise its authority under Article 66(c), UCMJ, to address a sentence that may be inappropriately severe. This guarantee serves as a sufficient check against the possibility of suffering life in prison for an attempted enticement of a minor to engage in what amounts to sexual abuse of a child when the actual offense of sexually abusing a child permits a maximum of only fifteen years' confinement, for example, or where, to use another example, the actual attempted rape of a child under Article 80, UCMJ, permits a maximum of twenty years' confinement. The case at hand exemplifies our system working in this respect.

SCHELL—ARMY 20110264

2422(b) conviction. Therefore, we return the matter for a rehearing, where the convening authority can either pursue the § 2422(b) offense, or simply order a rehearing on sentence for the two remaining offenses. *See United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006); *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

**CONCLUSION**

On consideration of the entire record, the finding of guilty of Charge II and its Specification is set aside. The remaining findings of guilty are affirmed. The same or a different convening authority may order a rehearing on Charge II and its Specification and the sentence, which is set aside. If the convening authority determines that a rehearing on Charge II and its Specification is impracticable, he may dismiss the charge and order a rehearing on the sentence only.

Senior Judge KERN, Senior Judge YOB, Judge JOHNSON, Judge ALDYKIEWICZ, Judge BURTON, and Judge MARTIN concur.

HAIGHT, Judge, joined by Chief Judge AYRES, Senior Judge COOK, and Judge GALLAGHER, dissenting:

Appellant was charged under Article 134, UCMJ, of a violation of 18 U.S.C. § 2422(b), which criminalizes, under the requisite circumstances, the knowing persuasion, inducement, enticement, or coercion of a minor to engage in illegal sexual activity or attempts to do so.[1] Appellant pleaded guilty to and was convicted of the attempted enticement.

In a written stipulation of fact, appellant repeatedly admitted that he had attempted to entice as well as enticed one whom he believed to be a fourteen year-old girl to engage in illegal sexual activity.[2] During the providence inquiry, as the

---

[1] The Specification of Charge II alleged, "In that Sergeant Nicholas R. Schell, U.S. Army, did, at or near Fort Leavenworth, Kansas, on or between 17 March 2010 and 18 March 2010, knowingly attempt to persuade, induce or entice an individual known to him by the screen name 'joco_cheer_girl' and given name '[TA]', a person the said Sergeant Schell believed to be less than 18 years of age, by means or facility of interstate commerce, to wit: the internet, to engage in sexual activity which, if undertaken, would constitute a criminal offense under Article 120 of the Uniform Code of Military Justice, in violation of 18 U.S. Code Section 2422(b) which conduct was of a nature to bring discredit upon the armed forces."

[2] Significantly, when disavowing any possible defense of entrapment, appellant stipulated that his predisposition to attempt to entice a minor to engage in sexual activity was based upon his history of inviting others to engage in sexually deviant behavior, not upon any history of actually engaging in sexually deviant behavior.

14

majority opinion details, appellant admitted sufficient facts detailing his attempted persuasion, enticement, or inducement of a minor to engage in sexual activity.

Later, in an unsworn statement, without denying any intent to entice, appellant stated he never intended to act on the sexually explicit conversations. This sentiment was echoed in defense counsel's sentencing argument. Before deliberation, the military judge clarified and all agreed that once the criminal enticement had occurred, it was unnecessary to show "follow-through." The defense counsel concurred, "That is correct, Your Honor, and specifically there is case law that does not require a substantial step moving forward to actually commit the offense for which he was enticing for, just that he intended to entice them to commit that offense."

## THERE IS NO INCONSISTENCY

The majority correctly points out that this court will disapprove any finding of guilty when the military judge fails to resolve matters inconsistent with the plea of guilty. *See* UCMJ art. 45(a). This is not such a case. A stated lack of intent to engage in sexual activity is not inconsistent with the intent to entice to engage in sexual activity.[3] The majority's explicit holding merely adds the word "actually" twice to the language of the statute. This addition is unnecessarily distortive and creates an inconsistency where none need exist. Their determination that "[i]n short, the accused must intend that the minor, ultimately, actually engage in illegal sexual activity as a result of his persuasion, inducement, or enticement" is contrary to the plain language of the statute.

Rather than attempting to decipher the statute by scrutinizing the legislative history of proposed legislation, I would adopt the federal circuits' approach and "conclude that, in enacting section 2422(b), Congress said what it meant and meant what it said" and "reject the . . . thesis that section 2422(b) should be interpreted to include, as an additional element of the offense, an intent that the underlying sexual activity actually take place." *United States v. Dwinells*, 508 F.3d 63, 65 (1st Cir. 2007).[4] The majority states "[a] definition for the intent required has yet to be

---

(. . . continued)

[3] Although it may be a practice of tautology, it is necessary to point out in the simplest of terms that the lack of intent to have sex would only be contradictory with an expressed intent to have sex, not the statutorily required intent to entice.

[4] While uniformity among the federal circuits is not per se determinative, it is informative that the United States Court of Appeals for the First Circuit went so far as to explicitly reject any notion of alternative interpretations. "The appellant tries to paint a picture of uncertainty by arguing that the courts of appeals have split over

resolved in our jurisdiction," disregarding fairly clear guidance from our superior court in *United States v. Winckelmann*, 70 M.J. 403 (C.A.A.F. 2011).

In *Winckelmann*, our superior court, after correctly listing the elements of an attempt under § 2422(b) as the intent to entice and a substantial step toward enticement, added the following footnote:

> While in this case, the military judge incorrectly instructed the members that the substantial step must be toward actually engaging in sexual activity rather than a substantial step towards enticement alone, that does not affect the analysis of the question whether there was a substantial step at all under the facts of this case.

*Id.* at 407 n.4. As the majority highlights, *Winckelmann* revolved around a "substantial step" analysis. Nevertheless, exactly what intent is required by § 2422(b) is indicated by the declaration, "[A] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent." *Id.* at 407 (citations omitted). Accordingly, the substantial step must correlate to the appropriate intent, making the aforementioned footnote all the more persuasive.

Our sister court, the United States Navy-Marine Corps Court of Criminal Appeals squarely addressed this issue and determined, "The specific intent required to violate § 2422(b) was also addressed by the Court of Appeals for the Armed Forces (CAAF) in *Brooks*. Specifically, CAAF adopted a Sixth Circuit Court of Appeals' view that an accused need not intend that the underlying sexual activity actually take place but only that the accused intend to persuade a minor to engage in such activity." *United States v. Garner*, 67 M.J. 734, 738 (N.M. Ct. Crim. App. 2009).[5] The majority minimizes the import of *Garner* by labeling its reliance upon

---

(. . . continued)
the interpretation of section 2422(b). But the case law does not support that gloomy assessment . . . . Insofar as we can tell, the decisions that are on point uniformly reject the 'double intent' hypothesis." *Dwinells*, 508 F.3d at 70 (citing *United States v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006); *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005); *United States v. Patten*, 397 F.3d 1100, 1103 (8th Cir. 2005); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000); *United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir. 2007)).

[5] That decision was affirmed by the Court of Appeals for the Armed Forces, without addressing the lower court's interpretation of *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008) or *Goetzke*, because the record contained the required guilty plea admissions by the accused. *United States v. Garner*, 69 M.J. 31 (C.A.A.F. 2010),

*United States v. Brooks*, 60 M.J. 495 (C.A.A.F. 2005), as a misinterpretation. This label is somewhat suspect as *Brooks* is referenced for its citation to *United States v. Bailey*, 228 F.3d 637 (6th Cir. 2000). The language in *Bailey* is straightforward and difficult to misinterpret:

> While it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.

*Bailey*, 228 F.3d at 639.

The majority takes the position that one who intends to persuade or entice must necessarily also intend for the underlying sexual activity to occur. This reasoning has been roundly rejected. When determining the admissibility of expert testimony regarding the likelihood that an accused would actually act on his enticements, courts have ruled that evidence as irrelevant because lack of intent to have sex does not make it more likely or not that the accused attempted to entice or persuade. *See United States v. Hofus*, 598 F.3d 1171 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 364 (2010).

While it is indeed interesting to consider whether § 2422(b) is a corrupting statute, a luring statute, or a "minor's assent" statute, ultimately, the plain language of the statute must be given effect. Appellant pleaded guilty to attempting to entice a minor to engage in illegal sexual activity, admitted to intending to entice one whom he thought was a minor to engage in illegal sexual activity, and never contradicted that admission. I simply do not share the majority's concern that application of the plain language of the statute would somehow create conflict with its legislative history,[6] improperly exclude predators from criminal liability, or

---

(. . . continued)
*aff'g* 67 M.J. 734 (N.M. Ct. Crim. App. 2009). Similarly, the record in this case contains ample admissions by appellant that he intended to persuade, entice, or induce.

[6] Section 2422(b) targets the sexual grooming of minors as well as the actual sexual exploitation of them. *See United States v. Engle*, 676 F.3d 405 (4th Cir 2012). "Section 2422(b) . . . was designed to protect children from the act of solicitation itself—a harm distinct from that proscribed by § 2423 [which criminalizes an intent to engage in illicit sex]." *United States v. Nitschke*, 843 F.Supp.2d 4, 11 (D.D.C. 2011) (citing *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011)).

inadequately address scenarios of indirect enticement, persuasion, or inducement.[7] Likewise, questions of preemption, maximum punishment, and closely related offenses do not compel a conclusion other than the statute means what it says.

For the above reasons, I respectfully dissent. I would affirm the findings of guilty and the sentence.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[7] Whether the underlying sexual activity occurs or is intended to occur is equally irrelevant to enticement of the minor to engage in illegal sexual activity with third parties as it is to enticement of a minor to have illegal sexual activity with the accused himself.