**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

DAVID ANTHONY GOETZKE,
          *Defendant-Appellant.*

No. 05-30267

D.C. No.
CR-04-00129-JDS

OPINION

Appeal from the United States District Court
for the District of Montana
Jack D. Shanstrom, District Judge, Presiding

Argued and Submitted
May 7, 2007—Portland, Oregon

Filed August 1, 2007

Before: Pamela Ann Rymer and Susan P. Graber,
Circuit Judges, and John S. Rhoades, Sr., District Judge.

Per Curiam Opinion

*The Honorable John S. Rhoades, Sr., Senior United States District Judge for the Southern District of California, sitting by designation.

## COUNSEL

Mark T. Errebo, Errebo Law Offices, Billings, Montana, for the defendant-appellant.

Marcia Hurd, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

---

**OPINION**

PER CURIAM:

A jury found David Anthony Goetzke guilty of attempting to persuade, induce, entice, or coerce a minor, W, to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). In this timely appeal, Goetzke argues that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt. The facts are not in dispute. The issue is whether a rational jury could have found that Goetzke's conduct demonstrated an intent to violate the statute and that he took a "substantial step" toward completing the crime. We conclude that a rational jury could, and we affirm.

I

In the summer of 2003, AG lived in Louisiana with her 10-year-old son W, who was developmentally disabled. At the suggestion of her husband, who was then working in Kuwait, AG sent W to a Montana ranch owned by a family friend, Ray Fettig, so that W might spend the summer in the great outdoors as his father had done as a child. Five or six days into the trip, AG learned that Goetzke, a registered sex offender whose sexual preference is young boys, was staying with Fettig. At her request, a social worker removed W from Fettig's residence and put him on a plane to Louisiana.

Later in the fall, Goetzke began telephoning W. He left messages calling W "little brother" and saying that he missed him. AG permitted Goetzke to speak to W one time while she listened on another line. Nothing untoward was said.

Goetzke sent W a letter from Montana in early February 2004, which AG intercepted. It included pictures, taken during W's visit in Montana, of W riding horses and motorcycles. Goetzke asked for a picture of W in the pants he wore while in Montana, and offered to take pictures and send them to W. The letter also told W that

> I don't know if you will understand, but I am gay, meaning I like guys more than I do girls. I hope you won't hate me. I have always wanted to tell you you have a nice butt, but I hope you won't tell anyone because it could get me into trouble, but I trust you to keep it between us.

The letter expressed Goetzke's "wish [that W] could come up here [to Montana] so that we could go horseback riding." Goetzke then wrote that

> I miss wrestling around with you. That was always fun. And giving you a back rub. I miss doing that. I like giving people a back rub, even when they don't have any clothes on. Then I can rub their butt. I hope it ain't bothering you about me talking about sex, being you're young, but I just wanted to tell you that you have a nice butt and am sure a nice peter.

Goetzke expressed his belief that W "was a cute young man." He also wrote about his new video games, telling W that "I got some new games for my Nintendo 64. I've got Turok Rage Wars, Mario Party 3, and Star Wars. I am to the last level . . . ." Goetzke told W that he had gone to see W's grandfather and that "I have known your grandpa since I was your age." He then wrote that "I liked talking to you on the phone, but I miss you even more, and I think about you all the time and wonder how you're doing. I really do hope you will write back. Please. It would mean a lot to me to have you write back." Goetzke signed off with "Love You Little Brother."

AG turned the letter over to the authorities who, posing as W and mimicking his writing style, responded. In March 2004, Goetzke sent a much more sexually explicit letter, which AG again intercepted. In the letter, Goetzke confirmed that "you do have a nice butt." He explained:

> The reason you wake up and your peter is sticking out is because that means you're horny and you are growing into a young man, and in a couple years, you will start to have sex. You know when you were here and I gave you a back rub, I wanted to rub your butt because you have a nice butt, and I wanted to put your peter in my mouth if you would have let me. But the next time your peter gets hard, sticking out, play with it. Put it in your hand and move your hand up and down, and you will like the way it feels. It will tickle. But anytime you don't know why about your body, you tell me, and I will help you understand. I really miss you. If you can, will you send me a picture of you?

Goetzke told W that

> soon school will be out. Are you ever going to come to Montana again? Maybe this summer? It sure would be nice to have you here, as I had a lot of fun when you were here. But if you ever do come to Montana again, would you let me see your butt naked and let me put your peter in my mouth? I would like that. And I hope you will keep writing to me. I like hearing from you and talking to you on the phone. I like the sound of your voice. But please don't tell anyone what we say in our letters. It could get me into a lot of trouble.

Goetzke further explained that, "[w]hen you wake up with your peter sticking out, that is called a hard-on, where your peter is hard and stiff." He then wrote:

> I have rode my horse a couple times on the weekend, and I hope someday you can come to Montana so then we could go riding together and go fishing like we did when you were here and ride my bike. And if you come back to Montana, I would get you a motorcycle of your own. Then we could ride and have fun. But I was real happy to hear from you. Thank you, Little Brother. Is it okay if I call you my little brother? Because I had a lot of fun with you, and I think about you a lot and wish you were here. But I really do think you have a nice butt. And thank you for not being mad at me for saying you have a nice butt, because you really do have a nice butt. And when you get older, people are going to see your butt the same way I do.

Goetzke asked W, "[I]s your peter long or short when it's sticking out?" He then told W that "I have a picture of you in a baseball uniform. I have it at the head of my bed. I wish Ray would have let you sleep upstairs." Goetzke signed off with "Love and miss you. Love always, Dave."

An undercover agent wrote a response for W, to which Goetzke did not reply. The last phone call was in March or April of 2004 when Goetzke called at 1:00 a.m. and AG told him to stop.

On October 26, 2004, a grand jury returned an indictment charging Goetzke with an attempt to persuade a minor to engage in sexual activity in violation of § 2422(b). During the one-day trial, AG testified regarding the phone calls, and an agent read the letters into evidence. Goetzke did not put on a defense. At the close of the evidence, Goetzke moved for an acquittal pursuant to Federal Rule of Criminal Procedure 29. Relying on *United States v. Meek*, 366 F.3d 705 (9th Cir. 2004), the district court denied the motion. The jury convicted Goetzke.

Goetzke's appeal challenges the sufficiency of the evidence. To it, we apply the familiar standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and ask whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

## II

**[1]** The elements that the government had to prove to convict Goetzke are that he knowingly (1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense.[1] *Meek*, 366 F.3d at 718. The government prosecuted Goetzke for an attempt to persuade, induce, entice, or coerce, rather than actually doing so, because W never received the letters due to his mother's interception of them. An attempt conviction requires evidence that the defendant "intended to violate the statute and took a substantial step toward completing the violation." *Id.* at 720 (internal quotation marks omitted).

**[2]** A rational juror could well have found that Goetzke knowingly tried to persuade, induce, entice, or coerce W to engage in prohibited sexual activity. He knew that W was underage, and Montana criminalizes oral sex when the victim is younger than 16.[2] Goetzke specifically directed his letters

---

[1]Title 18 U.S.C. § 2422(b) provides:

　　Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

[2]Montana Code Annotated section 45-5-503 punishes an individual "who knowingly has sexual intercourse without consent with another."

to W. In his letters, Goetzke made advances of a sexual nature —telling W that he was a "cute young man," suggesting an exchange of pictures, describing how he liked giving W a backrub and wanted to rub his "nice butt," advising W how to stimulate himself, and expressing the desire to see W naked and to "put your peter in my mouth." Redolent of the fun they had together riding horses, fishing, and being massaged, the letters were crafted to appeal to W, flatter him, impress him, and encourage him to come back to Montana "maybe this summer" when school was out, by promising the same kind of fun and a motorcycle of W's own. The letters essentially began to "groom" W for a sexual encounter in the event he returned to Montana. *See United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006) (" 'Child sexual abuse is often effectuated following a period of "grooming" and the sexualization of the relationship.' " (quoting Sana Loue, *Legal and Epidemiological Aspects of Child Maltreatment*, 19 J. Legal Med. 471, 479 (1998))), *cert. denied*, 127 S. Ct. 2150 (2007). Because of the allure of the recreational activities and the prospect of a motorcycle, the letters fit neatly within the common understanding of persuade, induce, or entice.[3] *See United States v. Dhingra*, 371 F.3d 557, 562 (9th Cir. 2004) (indicating that these terms are to be given their plain and ordinary meaning). Consequently, the evidence was sufficient to find that Goetzke intended to persuade, induce, entice, or coerce W to engage in unlawful sexual activity.

---

Section 45-5-501(1)(b)(iv) defines "without consent" to mean, "the victim is incapable of consent because the victim is . . . less than 16 years old." Under Montana law, sexual intercourse includes "penetration of the vulva, anus, or mouth of one person by the penis of another person." Mont. Code Ann. § 45-2-101(68)(a).

[3]To "persuade" is "to induce by argument, entreaty, or expostulation into some mental position"; to "induce" is "to move and lead (as by persuasion or influence)"; and to "entice" is "to draw on by arousing hope or desire." Webster's Third New International Dictionary 757, 1154, 1687 (unabridged ed. 1993).

**[3]** A rational trier of fact also could find that Goetzke took a substantial step toward completing the crime. "To constitute a substantial step toward the commission of a crime, the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose." *Walters v. Maass*, 45 F.3d 1355, 1358-59 (9th Cir. 1995) (internal quotation marks omitted). Goetzke mailed letters to W that flattered him, described the sex acts that Goetzke wanted to perform on him, and encouraged him to return to Montana. Those acts both advanced and verified the existence of Goetzke's purpose to persuade W to engage in sexual activity with him.

**[4]** Goetzke argues that, because he was not in a position to have physical contact with W—they were thousands of miles apart when he sent W the letters—he cannot be guilty of violating § 2422(b). But Goetzke was charged with attempting to *persuade, induce, entice, or coerce* W to engage in sexual activity with him—not with attempting to *engage* in sexual activity with W. The latter is an attempt to achieve the physical act of sex, for which physical proximity is integral. But the former is an attempt to achieve the mental act of assent, for which physical proximity can be probative but is not required. *See Dhingra*, 371 F.3d at 562 (emphasizing that the statute focuses on the actor and the intent of his actions to persuade, induce, or entice); *Brand*, 467 F.3d at 202 (holding that a conviction under § 2422(b) requires a finding only of an intent to entice, not an intent to perform the sexual act following the persuasion); *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) (stating that the underlying conduct that § 2422(b) criminalizes is the persuasion of the minor, rather than the sexual act itself); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (observing that "Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves").

**[5]** Similarly, travel by a defendant to meet a potential victim is probative, but not required, to advance and verify an

intent to persuade, induce, entice, or coerce. In *Meek*, 366 F.3d at 720, we found the defendant's "extensive [online] sexual dialog, transmission of a sexually-suggestive photograph, repeated sexual references as to what [the defendant] would do when he met the boy, and his travel to meet the minor at a local school" sufficient to evidence his guilt under § 2422(b). *Accord Brand*, 467 F.3d at 202-04 (holding that the defendant's initiating contact, sexual advances, grooming behavior, and sexually explicit conversations provided overwhelming evidence of an attempt to entice, and that his traveling to a prearranged meeting place was a final substantial step); *United States v. Blazek*, 431 F.3d 1104, 1106-07 (8th Cir.) (holding that the jury could find intent to entice a minor based on explicitly sexual talks followed by travel to a prearranged meeting place), *cert. denied*, 126 S. Ct. 1800 (2005); *United States v. Patten*, 397 F.3d 1100, 1102-03 (8th Cir. 2005) (holding that evidence of internet chats, a phone call arranging a meeting, and travel to the prearranged meeting place were sufficient); *United States v. Munro*, 394 F.3d 865, 869 (10th Cir. 2005) (holding that the evidence was sufficient where the defendant initiated sexual conversations, tried to entice the victim by representations about his car, house, and money, and went to a prearranged meeting place); *Murrell*, 368 F.3d at 1288 (holding that the evidence was sufficient where the defendant traveled two hours to meet a minor for sex in exchange for money, carrying a teddy bear, cash, and condoms). But nowhere in *Meek* did we hold, or even hint, that physical proximity or travel is *necessary* to constitute a substantial step under § 2422(b).

**[6]** To constitute a substantial step, a defendant's "actions must cross the line between preparation and attempt by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances." *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995) (internal quotation marks omitted). We agree with the Third, Sixth, and Tenth Circuits that, when a defendant initiates conversation with a minor, describes the sexual acts that he would like to

perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity. *See United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (concluding that instant messages arranging a meeting and appearing at the prearranged meeting place each provided sufficient evidence of a substantial step toward persuading or inducing a minor); *United States v. Thomas*, 410 F.3d 1235, 1245-46 (10th Cir. 2005) (holding that the defendant's initiation of sexual conversation, writing insistent messages, and attempting to make arrangements to meet were a substantial step); *Bailey*, 228 F.3d at 639-40 (holding that the defendant's attempts to schedule meetings with minors constituted a substantial step). Unlike a bank robber who has yet to move toward a bank,[4] such a defendant will succeed in his persuasion, inducement, enticement, or coercion, unless interrupted by the fortuitousness of a circumstance independent from him, such as intercession by a parent or law enforcement officer (as happened here), or refusal by the minor.

[7] Goetzke did more than merely think about sexual activity with a minor or reduce his thoughts to a diary. He sent W letters replete with compliments, efforts to impress, affectionate emotion, sexual advances, and dazzling incentives to return to Montana, and proposed that W return during the upcoming summer.[5] In short, Goetzke made his move. Indeed, given their prior relationship and what Goetzke knew of W

---

[4]In *United States v. Buffington*, 815 F.2d 1292, 1303 (9th Cir. 1987), we held that the evidence of an attempted bank robbery was insufficient to constitute a substantial step because the defendants did "not take a single step toward the bank, they displayed no weapons and no indication that they were about to make an entry." Here, of course, the crime is persuasion, inducement, enticement, or coercion—not performing a physical act. Even so, analogically, the "movement" toward completing the crime was Goetzke's mailing the letters *to W*.

[5]Because Goetzke's letters proposed that W return to Montana, we need not decide whether an attempt to arrange a meeting is required to constitute a substantial step under § 2422(b).

and their circumstances, the most substantial steps he realistically could take were to communicate his affections and carefully-crafted incentives to W by telephone and mail, which he did. Accordingly, a rational juror could conclude beyond a reasonable doubt that Goetzke intended, and advanced and verified his intention, to persuade, induce, entice, or coerce W to engage in unlawful sexual activity.

AFFIRMED.