**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MICHAEL LOUIS MCCARRON,
*Defendant-Appellant.*

No. 20-10072

D.C. No.
1:19-cr-00012-1

OPINION

Appeal from the United States District Court
for the District of Guam
Frances Tydingco-Gatewood, Chief District Judge,
Presiding

Argued and Submitted January 19, 2022
Honolulu, Hawaii

Filed April 18, 2022

Before: Diarmuid F. O'Scannlain, Eric D. Miller, and
Kenneth K. Lee, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's judgment in a case in which the defendant contended that the Government failed to offer sufficient evidence to support his conviction for attempted enticement of a minor in violation of 18 U.S.C. § 2422(b).

Addressing the attempt element of a violation of § 2422(b), the panel addressed the threshold question of whether the defendant's conduct advanced "the criminal purpose charged." The panel emphasized that the defendant was not charged with attempting to engage in sexual activity with a minor; rather, the "criminal purpose charged" under § 2422(b) was the "attempt to achieve the mental act of assent." The panel explained that the defendant's multiple proposed lurid rendezvous, even if purely hypothetical, suffice as evidence of a substantial step in his attempt to cause a minor's assent to unlawful sexual activity. The panel thus rejected the defendant's suggestion that the defendant's travel must bear on the analysis, noting that this court has not held, or even hinted, that physical proximity or travel is necessary to constitute a substantial step under § 2422(b).

Addressing the second element, the panel held that a rational juror could readily conclude that the facts of this case, viewed in the light most favorable to the Government, demonstrate that the defendant attempted to persuade,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

induce, entice, or coerce a minor's assent to unlawful sexual activity.

As to the third element, the panel noted that an actual minor victim is not required for an attempt conviction under § 2422(b), and that the defendant is therefore misguided to the extent he ascribes any significance to the fact that the person with whom he communicated was not actually a person under 18 years of age.

As to the fourth element ("to engage in sexual activity that would constitute a criminal offense"), the panel wrote that the defendant properly conceded that *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021), rejected his argument that the Guam statute mentioned in the indictment does not apply to conduct on a military base because it was "not . . . assimilated into federal law under the Assimilative Crimes Act."

The panel addressed other arguments concerning the conviction and sentence in a concurrently filed memorandum disposition.

---

## COUNSEL

Kathryn A. Young (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Garth R. Backe (argued), Assistant United States Attorney; United States Attorney's Office, Saipan, Commonwealth of the Northern Mariana Islands; Stephen F. Leon Guerrero, Assistant United States Attorney; Shawn N. Anderson,

United States Attorney; United States Attorney's Office, Hagatna, Guam; for Plaintiff-Appellee.

_____

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide the validity of a defendant's conviction for attempting to cause a minor's assent to unlawful sexual activity.[1]

I

A

From approximately October 21, 2017, to November 30, 2017, Michael McCarron, who held a civilian position in the Navy, was on temporary duty at the Guam naval base. On October 31, 2017, McCarron responded to a post on the "Women for Men" Craigslist webpage. Although the post was purportedly written by an individual called Brit, the actual author was Special Agent Adam Ring of the Air Force Office of Special Investigations.

"Brit" stated in her posting that she was a military "brat[]" "stuck on base" at Andersen Air Force Base because she could not drive. McCarron responded to Brit's post by email, attaching a picture of his penis and writing, "I have base access and I can drive. how are you?" After a short

_____

[1] In a concurrently filed memorandum disposition, we address Defendant McCarron's other arguments concerning his conviction and sentence. *See United States v. McCarron*, — F. App'x — (9th Cir. 2022).

exchange, Brit asked, "how old r u??"[2]   McCarron responded, "32, and you?"  Brit replied, "13,.  is that ok?"  At first, McCarron answered, "No thank you.  I am good.  Have a good night!"   But two hours later, McCarron responded to his own earlier email:  "What is up with a 13 year old doing this?"   After a few more minutes, McCarron sent another follow-up:  "Are you really 13?  what were you thinking about doing?"   And in a still-further email, McCarron stated, "I have to admit I am curious...  cna I see what you look like?"

Over the next few weeks, McCarron and Brit continued to correspond by email.   McCarron engaged with Brit enthusiastically, explaining that he "like[s] to kiss and use [his] tongue on people," stating he "really like[d] imagining [Brit] with [her] fingers touching [her] private parts," and describing his imagined view of Brit as having "[s]mall perky breasts with beautiful eyes."   Throughout their conversations, McCarron transmitted 12 different images, and one video, of his penis.

McCarron's initial apparent hesitation would sometimes resurface, especially when Brit would emphasize her inexperience. *See, e.g.*, 3 ER 280 ("idk i just dont know bout that kind stuff so when u ask me i dont kno wht to say??  im kind embarrssd that it makes me look yung..."); 3 ER 294 ("i don kno much bout all that lol,...  sry if tht makes me sound dumb!").   In one exchange, for example, McCarron remarked, "You sound very innocent, which is okay.  Also,

---

[2] In part to replicate what McCarron describes in his brief as Brit's "not developed, almost childlike" manner of speaking, we present the correspondence as it appears in the record, including with various typographical and other errors.  We do not denote any such errors in McCarron and Brit's correspondence.

my cue not to send you more pics if you dont want them. Innocence should never be wasted.  Treasure it always."

At one point, Brit expressly asked, "[D]oes it bother u that im only 13?  if it doesn then im rlly ok wit it i jst was wonderin why thas all lol."    McCarron responded, "Ummmmm.dont know, would love to know what you look like.  YOu know?"  Eventually, Brit—or rather Special Agent Ring—sent a picture of a young-looking female military police officer and represented that the person in the picture was Brit.  McCarron responded, "That is very sexy. I love your eyes and your smile!  I cant believe how beautiful you are! . . .  Wow, just wow!  Can I see more ;)?"  Later, Brit again asked, "u sure u are ok with my age??  sry to keep askin i jst get worried is all!"  McCarron replied, "While your age does make me nervous, you are so incredibly beautiful.  That is okay you keep asking, means you are real. I cant help but be nice to a lady with such a beautiful face!"

On November 14, 2017, McCarron emailed Brit to inform her he was "really horny and really drunk and really happy" and was "[t]rying to figure out what" he wanted to do.  He then transmitted another picture of his penis and wrote, "I would love to meet yu and teach you about everything sex one day...  You are so beautiful!"  Brit asked, "would u rlly meet me and do all tht??  i dont much abut all tht stuf...is tht wierd???"  McCarron responded, "I dont mind you knowing nothing about that.  I would love to teach you, very slowly or fast depending on what you wanted....  You would set the pace!"  The conversation continued, with McCarron sending more pictures of his penis and repeatedly asking Brit to masturbate and to send pictures of herself doing so.

Another night, McCarron asked Brit if she had questions "about sex or kissing" and if she had ever "been naked with

someone else." He told Brit he "completely" understood her response that she was "curious but also liek scared" because, he said, "[i]t is hard to learn your body, especially with someone else there." He then informed Brit that he liked to share his "naked body and let people explore it... I try to touch myself everyday, because I love the feeling! Would you ever like to see it? My body that is?" Brit queried, "you mena liek in real life??" McCarron replied, "YEah? Or in pictures if I make you too nervous....." He later stated, "I would love to see underneath your shirt and shorts... I would love to slowly teach you about your body... wish I could get more pics of you!" He continued, "I would love to put my mouth around your nipples and grab your butt!" Brit said she had another picture to share, but with a caveat: "i gotta kno if ur liek serious or jst messin around,.. liek wud u rlly wanna do that stuff in real life?" McCarron responded, "I am really serious right now!"

On November 21, 2017, McCarron emailed Brit and asked when she would "be able to hang (make) out." An hour later, he responded to himself: "Wish I could be with you right now, and wish we could both be exploring our naked bodies!" Brit replied "maybe liek monday" and asked what the two would do if they met. McCarron answered, "I would like to maybe kiss, maybe let you explore anything you want, I would be down for whatever..... I am really into how beautiful you are!" McCarron then sent five more emails within roughly ten minutes (and with no interim response from Brit), stating that he would "take things slow," that he was "here to help" as Brit's "faithful servant," and that he would not do anything she did not "want to do," as "being nervous is natural." Brit asked for the name of McCarron's hotel, and McCarron's answer included, unprompted, his room number. Brit expressed that she was "rlly rlly excited" and sent another picture (of the young-

looking female officer) as an apology for having to sign off early for the night.  McCarron sent several more emails, including another picture of his penis, and told Brit he loved her and could not "wait to be with [her] in persn."

On November 28, 2017, McCarron wrote to Brit that he had been thinking of her "most of the day" and that he "wished" he had "been able to kiss [her] and have fun with [her]."  Brit responded, "lol well we can tmrw if u want," as her dad would "be gone for all day."  McCarron asked, "What would you wanna do?  Somethin sexual?  or just chill out and see where it goes?"  Brit answered that she was "up for wahtever."  McCarron then abruptly announced he was leaving for the night.  Brit asked him to confirm if he was coming the next day, and he responded, "I want to, will depend on work.  I will message when I get off."  Brit asked for more information, like "what time," because she is "a planner."  McCarron responded, "Would be sometime after 3pm and I really really want to....  but that is the best I can do."

The next day, McCarron wrote to Brit:  "Still at work, thinking about how beautiful you are...."  He then re-sent a picture of his penis.  A few minutes later, he asked, "What is your address?  ANd when is it too late to cum over?"  Brit wrote back about 90 minutes later:  "hey!!  omg r u for real u still wanna come over??"  McCarron replied that he did "but [was] still working."  When Brit responded that it was "so late," McCarron replied, "It is late.  Im okay...  waiting for one thing, then gonna be able to work maybe."  Brit asked how long he would be working, and McCarron said, "FOr a bit longer."  At 8:01 p.m., McCarron sent his final email to Brit:  "I am just now about to get off of work.  what are you up to?  is it too late?  I am pretty tired right now."

The following day, members of various law enforcement agencies executed a search warrant for McCarron's hotel room.  McCarron was questioned by the FBI and was later arrested.

B

A grand jury returned a two-count indictment against McCarron.  Count One charged McCarron with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b).[3] Count Two charged McCarron with attempted transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470.  At trial, the jury returned a guilty verdict on both counts.  The district court sentenced McCarron to ten years as to Count One and ten years as to Count Two, with the terms to be served concurrently.  The district court entered judgment on February 18, 2020.  McCarron timely appealed.

II

A

McCarron contends that the Government failed to offer sufficient evidence as to Count One, attempted enticement

---

[3] 18 U.S.C. § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

of a minor in violation of 18 U.S.C. § 2422(b).  Because the Government obtained McCarron's conviction, in evaluating McCarron's challenge to the sufficiency of the evidence, we must "construe the evidence 'in the light most favorable to the prosecution,' and only then determine whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We may disturb McCarron's conviction only if "no rational juror could conclude that the government proved its case beyond a reasonable doubt."  *See id.* at 1167.

## B

To convict McCarron under 18 U.S.C. § 2422(b), the Government needed to prove that "he knowingly (1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense."  *See United States v. Goetzke*, 494 F.3d 1231, 1234–35 (9th Cir. 2007) (per curiam).  We consider each element in turn.

## 1

"An attempt conviction requires evidence that the defendant 'intended to violate the statute and took a substantial step toward completing the violation.'"  *Goetzke*, 494 F.3d at 1235 (quoting *United States v. Meek*, 366 F.3d 705, 720 (9th Cir. 2004)).  "To constitute a substantial step toward the commission of a crime, the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose."  *Id.* at 1235–36 (quoting *Walters v. Maass*, 45 F.3d 1355, 1358–59 (9th Cir. 1995)).  Moreover, "a defendant's 'actions must cross the line between preparation and attempt

by unequivocally demonstrating that the crime will take place unless interrupted by independent circumstances.'" *Id.* at 1237 (quoting *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995)).

a

The threshold question is whether McCarron's "conduct . . . advance[d] the criminal purpose charged." *See Goetzke*, 494 F.3d at 1235–36.  Notably, McCarron was *not* charged with attempting to engage in sexual activity with a minor.

Rather, "the criminal purpose charged" under § 2422(b) is the "attempt to achieve the mental act of assent." *Id.* at 1236; *see also United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) ("Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.").  As we explained in *Goetzke*:

> Goetzke argues that, because he was not in a position to have physical contact with W— they were thousands of miles apart when he sent W the letters—he cannot be guilty of violating § 2422(b).  But Goetzke was charged with attempting to *persuade, induce, entice, or coerce* W to engage in sexual activity with him—not with attempting to *engage* in sexual activity with W.  The latter is an attempt to achieve the physical act of sex, for which physical proximity is integral. But the former is an attempt to achieve the mental act of assent, for which physical proximity can be probative but is not required.

*See Goetzke*, 494 F.3d at 1236. *Goetzke* thus instructs that the issue here is whether "*any* rational trier of fact," *see Nevils*, 598 F.3d at 1161 (quoting *Jackson*, 443 U.S. at 319), could conclude that McCarron "attempt[ed] to achieve the mental act of assent," *see Goetzke*, 494 F.3d at 1236.

In contending otherwise, McCarron relies on an erroneous statement in the jury instructions. The district court told the jury that "it is necessary for the government to prove that the defendant intended to engage in sexual penetration with the [minor], and knowingly and willfully took some action that was a substantial step toward bringing about or engaging in sexual penetration." McCarron argues that the district court correctly stated the law and that we should reverse his conviction because the evidence did not "unequivocally demonstrat[e]" that he would have engaged in sexual activity with a minor. *See Nelson*, 66 F.3d at 1042. We must, therefore, re-emphasize the point: McCarron "was charged with attempting to *persuade*, *induce*, *entice, or coerce* [a minor] to engage in sexual activity with him—not with attempting to *engage* in sexual activity with [a minor]." *See Goetzke*, 494 F.3d at 1236. The sufficiency of the evidence must be evaluated accordingly.

b

In *Goetzke*, we joined several of our sister circuits in concluding certain evidence sufficed to verify a defendant's "attempt to achieve the mental act of assent": "[W]hen a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity." *Goetzke*, 494 F.3d at 1237. As set forth in Part II.B.2 below, there can be no doubt that McCarron did all these things.

McCarron asserts he never took a substantial step because, he maintains, he never planned to meet with Brit. Indeed, McCarron argues that the Government tried "to pressure McCarron into meeting with" Brit, and that he "repeatedly rebuffed" her "insistent attempts to arrange . . . a meeting."

McCarron's argument appears to hinge on an assumed difference between "propos[ing] a rendezvous" and "arrang[ing] a meeting." *See Goetzke*, 494 F.3d at 1237 & n.5. In a footnote in *Goetzke*, we stated that "we need not decide whether an attempt to arrange a meeting is required to constitute a substantial step under § 2422(b)." *See id.* at 1237 n.5. Of course, in the same decision, we held that a defendant who "proposes a rendezvous to perform" the sex acts he has described to the minor "has crossed the line toward" attempting to violate the statute. *Id.* at 1237. Because McCarron cannot contend he did not "propose a rendezvous," his argument requires there be something different about "arrang[ing] a meeting." *See id.* at 1237 & n.5.

Unfortunately for McCarron, we discern no pertinent distinction here. McCarron's multiple proposed lurid rendezvous, even if purely hypothetical, suffice as evidence of a substantial step in his attempt to cause a minor's assent to unlawful sexual activity. *See* 18 U.S.C. § 2422(b); *Goetzke*, 494 F.3d at 1237. Indeed, the record "unequivocally demonstrat[es]" that a completed crime would have occurred were it not were it not "interrupted by [the] independent circumstance[]" of Brit's actual age and identity. *Cf. Nelson*, 66 F.3d at 1042. We thus reject McCarron's suggestion, in arguing that the cases cited in *Goetzke* "involved a defendant traveling to meet with a minor," that the defendant's travel must bear on our analysis.

*Goetzke* itself refutes such suggestion: We have not "h[e]ld, or even hint[ed], that physical proximity or travel is *necessary* to constitute a substantial step under § 2422(b)." *See Goetzke*, 494 F.3d at 1236.

Although *Goetzke* describes but one way the Government may meet its burden of showing a "substantial step" under § 2422(b), the upshot of that decision is clear: A defendant who, after initiating contact with a minor, "proposes a rendezvous to perform" unlawful sexual activity has taken a "substantial step" toward a completed crime under § 2422(b). *See id.* at 1237.[4] In such a situation, we reaffirm, nothing more is required.

2

"A rational juror could well have found" that McCarron "knowingly tried to persuade, induce, entice, or coerce [Brit] to engage in prohibited sexual activity." *See Goetzke*, 494 F.3d at 1235. We have concluded that the evidence was sufficient to sustain a defendant's conviction under § 2422(b) where the defendant specifically directed his letters to a minor; made sexual advances and gave

---

[4] McCarron's reliance on the Seventh Circuit's decision in *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008), is misplaced. In *Gladish*, the Seventh Circuit distinguished *Goetzke* by observing that Goetzke's "effort to lure the victim back to Montana for sex could not be thought idle chatter." *Id.* at 650. The *Gladish* "defendant did not indicate that he would travel to" the minor, "nor did he invite her to meet him." *Id.* Here, as noted above and discussed below, McCarron *did* "indicate that he would travel to" Brit, and he *did* "invite her to meet him," including by providing his hotel room number. *See id.* "Of course," to the extent *Gladish* can be read for the proposition that § 2422(b) requires intent to engage in sex rather than intent to persuade, induce, entice, or coerce, "we are bound to follow *Goetzke* rather than *Gladish*." *Cf. United States v. Hofus*, 598 F.3d 1171, 1179 (9th Cir. 2010).

compliments; "suggest[ed] an exchange of pictures"; described the acts he would perform on the minor; and "advis[ed]" the minor on how to stimulate himself. *See id.*

McCarron did all these things and more. At first, when Brit purported to be 13, McCarron responded, "No thank you. I am good. Have a good night!" But he came back two hours later, sending a series of follow-up responses indicating he was "curious." Brit repeatedly emphasized her inexperience and typed in a way designed to appear youthful. *See, e.g.*, 3 ER 280 ("i jst dont knw alot bout tht stuf sry..."). McCarron would often react to these displays with advice: "Innocence should never be wasted. Treasure it always." But Brit's age did not prevent McCarron from trying to flatter her. When Brit asked, "u sure u are ok with my age??," McCarron replied, "While your age does make me nervous, you are so incredibly beautiful. That is okay you keep asking, means you are real. I cant help but be nice to a lady with such a beautiful face!" He repeatedly asked Brit to masturbate and to send pictures of herself doing so. And he told Brit that he would "love to meet [her] and teach [her] everything about sex one day." He said he did not mind that she knew "nothing about that," as he "would love to teach [her], very slowly or fast depending on what [she] wanted." On another night, he asked Brit if she would like to see his "naked body" in real life—"[o]r in pictures if I make you too nervous." He later said, "I would love to see underneath your shirt and shorts... I would love to slowly teach you about your body..." and "I would love to put my mouth around your nipples and grab your butt!" When Brit asked if he was serious about "do[ing] that stuff in real life," McCarron responded, "I am really serious right now!" And on yet another night, after telling Brit he would be "down for whatever" when they met, McCarron then sent five more emails within roughly ten minutes (and with no interim

response from Brit), stating that he would "take things slow," that he was "here to help" as Brit's "faithful servant," and that he would not do anything she did not "want to do," as "being nervous is natural."

Again, a rational juror could readily conclude that these facts, viewed in the light most favorable to the Government,[5] demonstrate that McCarron attempted to "persuade[], induce[], entice[], or coerce[]" a minor's assent to unlawful sexual activity.  *See* 18 U.S.C. § 2422(b).

3

To the extent McCarron ascribes any significance to the fact that Brit was not actually "a person under 18 years of age," he is misguided.  *See Meek*, 366 F.3d at 717 ("We join our sister circuits in concluding that 'an actual minor victim is not required for an attempt conviction under 18 U.S.C. § 2422(b).'" (quoting *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002))).

---

[5] McCarron's argument that he was "not serious" when he asked for Brit's address is one of many instances where McCarron impermissibly asks that we draw inferences from the evidence in his favor.  For example, McCarron contends that he did not ask for Brit's address until it was "too late to come over."  He continues:  "Certainly McCarron had no intention of heading to 'Brit's' house at 8pm when 'Brit's' father would be returning any time, if he had not already returned, from a daytime trip."  Such *ipse dixit* has no force here, where our review must respect the jury's factfinder role and all evidence must be viewed in the light most favorable to its verdict.  *See Jackson*, 443 U.S. at 319 ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.").

4

Finally, in his reply brief, McCarron acknowledges that our recent decision in *United States v. Lopez*, 4 F.4th 706 (9th Cir. 2021), "rejected [his] argument" that the Guam statute mentioned in the indictment does not "apply to conduct on a military base" because it was "not . . . assimilated into federal law under the Assimilative Crimes Act." Because McCarron properly concedes this issue, we need not discuss it.

III

The judgment of the district court is **AFFIRMED.**