*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Sivar Y. COX**
Private (E-1), U.S. Marine Corps
*Appellant*

**No. 202400194**

_____

Decided: 24 September 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan C. Lipton

Sentence adjudged 29 July 2023 by a general court-martial tried at Marine Corps Base Camp Lejeune, North Carolina. Sentence in the Entry of Judgment: confinement for 14 months and a dishonorable discharge.

For Appellant:
*Lieutenant Commander Christopher C. McMahon, USN*

For Appellee:
*Colonel Scott A. Wilson, USMC*
*Lieutenant Colonel Candace G. White, USMC*

Judge KORN delivered the opinion of the Court, in which Chief Judge
DALY and Senior Judge HARRELL joined.

————————————

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Appellate Procedure
30.2.**

————————————

KORN, Judge:

A general court-martial composed of members with enlisted representation
convicted Appellant of one specification of attempted sexual assault in viola-
tion of Article 80, Uniform Code of Military Justice (UCMJ).[1] The military
judge sentenced Appellant to be confined for 14 months and a dishonorable
discharge.[2]

Appellant raises a single assignment of error: "[w]hether the evidence is
factually insufficient to prove the overt act and the specific intent underlying
Appellant's conviction for attempted sexual assault." We find that the evidence
is factually sufficient and affirm the findings and sentence.

## I. BACKGROUND

*1. Facts of the case*

A group of Marines had a party at a barracks smoke pit at Marine Corps
Air Station New River, North Carolina. Lance Corporal Juliet,[3] who lived in a
nearby barracks, invited her friend LCpl Alpha, who in turn brought Appellant
to the party. Prior to the party, LCpl Juliet and Appellant had never met.

---

[1] 10 U.S.C. §880. The military judge entered a finding of not guilty for one specifi-
cation of Article 120, UCMJ, pursuant to Rule for Courts-Martial 917. The members
found Appellant not guilty of the remaining four specifications of Article 120, UCMJ.

[2] Appellant was credited with 324 days of pretrial confinement.

[3] All names other than those of Appellant, the military judge, and counsel are pseu-
donyms.

Lance Corporal Juliet became highly intoxicated at the party. She was described by various witnesses as unable to stand,[4] unable to walk,[5] out of it,[6] and unresponsive.[7] Other partygoers, including Appellant, therefore carried her to her barracks room.[8] While being carried to her room, LCpl Juliet vomited on herself.[9]

After bringing LCpl Juliet to her room and placing her on her bed, most of the other individuals returned to the party, but Appellant and LCpl Alpha remained in LCpl Juliet's room.[10] Lance Corporal Alpha began video chatting with her fiancé, Ms. Charlie, and after a few minutes continued the chat in LCpl Juliet's bathroom.[11] A few minutes later, LCpl Juliet exited the bathroom while still video chatting with Ms. Charlie.[12] Upon exiting the bathroom, she discovered Appellant on top of LCpl Juliet kissing her.[13] Although highly intoxicated, LCpl Juliet made noises, said "no," and sounded like she was fighting.[14]

Although she believed that Appellant was sexually assaulting LCpl Juliet, LCpl Alpha felt unable to directly intervene.[15] Instead, she aimed her phone's camera at Appellant and LCpl Juliet so that Ms. Charlie could see what was happening.[16] While aiming the camera at Appellant and LCpl Juliet, LCpl Alpha also texted one of the Marines at the party, asking for help.[17] Both LCpl

---

[4] R. at 610.

[5] R. at 1051.

[6] R. at 735.

[7] R. at 759.

[8] R. at 613, 1050-52.

[9] R. at 1051, 1053.

[10] R. at 1057.

[11] R. at 1057.

[12] R. at 1062-63.

[13] R. at 1063.

[14] R. at 1065, 1896.

[15] R. at 1066-67.

[16] R. at 1067.

[17] R. at 1070.

Alpha and Ms. Charlie observed Appellant on top of LCpl Juliet as she lay on the bed.[18]

After receiving LCpl Alpha's texts, four individuals ran the short distance from the party to LCpl Juliet's room.[19] Upon their arrival, the scene further devolved into chaos, and Appellant was dragged out of the room and attacked.[20] During this time, Appellant made a number of statements, including "I didn't do anything," "she wanted it," and "I don't want to go to jail."[21] While it is undisputed that LCpl Juliet's pants were down when the others arrived at her room,[22] the various witnesses provided inconsistent testimony regarding whether Appellant's pants were off,[23] unbuttoned and unzipped,[24] or whether he was "undoing his pants."[25]

### 2. Excusal of the Members

Appellant's court-martial took an unusual turn after the majority of the Government's witnesses had testified. After the military judge instructed the members to disregard an inadmissible fact that arose during LCpl Alpha's testimony, one of the members indicated that he could not follow the military judge's instruction.[26] The military judge questioned this member individually

---

[18] R. at 1065, 1893.

[19] R. at 622-23.

[20] R. at 628.

[21] R. at 710.

[22] Appellant concedes this fact before this Court.

[23] R. at 1067, 1895.

[24] R. at 690.

[25] R. at 1834.

[26] R. at 1272.

and ultimately learned that the members impermissibly discussed the evidence and the case throughout the trial.[27] The military judge excused the entire panel and seated a new members panel, who listened to the recording of the previous testimony.[28]

## II. DISCUSSION

### 1. Law

This "Court may consider whether a finding of guilty is correct in fact upon request of an appellant who makes a specific showing of a deficiency in proof."[29] If an appellant makes such a showing, this "Court may weigh the evidence and determine controverted questions of fact," providing "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence."[30] If this Court is "clearly convinced that the finding of guilty was against the weight of the evidence," we "may dismiss, set aside, or modify the finding, or affirm a lesser finding."[31]

An attempt offense under Article 80, UCMJ, requires "a specific intent to commit the offense, accompanied by an overt act which directly tends to accomplish the unlawful purpose."[32] The overt act must go beyond mere preparatory steps and be "a direct movement toward the commission of the offense."[33] The overt act must be a substantial step toward the commission of the crime,

---

[27] R. at 1273.

[28] Appellant moved to dismiss the charges with prejudice and affirmatively declined to request a mistrial. The military judge denied Appellant's motion and proceeded with new members. Appellant has not challenged this procedure here. Therefore, the Court summarizes it only for the below discussion of the level of deference due to the factfinder.

[29] Art. 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[30] *Id.*

[31] *Id.*

[32] *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012) (quoting *Manual for Courts-Martial (MCM), United States*, pt. IV, para. 4.a.(a), c.(1)-(2)).

[33] *Id.*

and "must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances."[34]

*2. Assuming Appellant has made a showing sufficient to trigger our factual sufficiency analysis, the evidence still demonstrates that his conviction is factually sufficient.*

We start by noting that while we give appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence, we agree with Appellant that the appropriate deference in this case is minimal, as the substitute members received the majority of the testimony by listening to the audio recording of the witness examinations.[35] Therefore, these members were in only a slightly better position to judge most of the witnesses' credibility than this Court.

The specification alleged as follows:

> In that Private Sivar Y. Cox, U.S. Marine Corps, on active duty, did, on board Marine Corps Air Station, New River, North Carolina, on or about 17 March 2023, attempt to sexually assault [LCpl Juliet], U.S. Marine Corps, to wit: by attempting to commit a sexual act upon the said [LCpl Juliet] by penetrating her vulva with Private Cox' penis without the consent of [LCpl Juliet].[36]

The military judge instructed the members that in order to find Appellant guilty, they must be convinced beyond a reasonable doubt that "the accused did a certain overt act, that is, he removed [LCpl Juliet's] pants and removed his own pants."[37]

---

[34] *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (quoting *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007)) (internal quotation marks omitted).

[35] All but one of the witnesses who had previously testified sat on the witness stand as their testimony was played for the new members, who then had the opportunity to ask questions of the witnesses. The exception was LCpl Alpha, who the military judge found was unavailable to return to the witness stand.

[36] The charge sheet.

[37] R. at 2249.

Appellant argues that his conviction for attempted sexual assault is factually insufficient because the Government did not prove that Appellant removed his own pants, and therefore failed to prove he specifically intended to sexually assault LCpl Juliet. Appellant concedes that the evidence established that he removed LCpl Juliet's pants.

We must first consider whether Appellant has made a specific showing of a deficiency in proof.[38] Here, we will assume without deciding that by identifying that contradictory evidence existed regarding the state of Appellant's pants when he was discovered on top of LCpl Juliet in her bed, Appellant has identified a sufficient weakness in the evidence to initiate our factual sufficiency review.

This Court is unconvinced, however, by Appellant's identified weakness in the evidence. While Appellant puts a great deal of stock in the fact that the testimony is varied about his own state of undress, we do not. There were only two witnesses who had an extended opportunity to observe Appellant's actions with LCpl Juliet—LCpl Alpha and Ms. Charlie.[39] Both of those witnesses unequivocally described Appellant pulling down his own pants while he was on top of LCpl Juliet on her bed. While the Defense impeached both witnesses' testimony to a degree, this Court is convinced by their testimony that they saw Appellant pull down his pants. The fact that the other witnesses, who came upon an increasingly chaotic scene, provided inconsistent testimony about the state of Appellant's undress when they arrived at the room does not make us question the veracity or accuracy of LCpl Alpha's or Ms. Charlie's testimony.

Even assuming, arguendo, that this Court was unconvinced whether Appellant had pulled down his own pants, it would not produce the result advocated by Appellant. Appellant argues that if the evidence only shows that he removed LCpl Juliet's pants, the evidence would therefore be factually insufficient to prove his intent to sexually assault her because it supports equally plausible theories as well, such as that he intended to "merely" engage in foreplay or perform oral sex on her.[40] However, this Court is not limited in determining Appellant's intent based solely on the overt act instructed upon by the

---

[38] Art. 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[39] Lance Corporal Juliet had no memory of the events in question.

[40] Appellant's Brief at 24.

military judge.[41] While intent can be proven by direct evidence, including the evidence that constitutes an overt act in an attempt charge, it can also be proven by circumstantial evidence.[42] And both the direct and circumstantial evidence of Appellant's intent is overwhelming.

Lance Corporal Juliet was highly intoxicated to the point where she had difficulty walking and communicating and had to be carried to her bed. Immediately prior to the events in question, she was nearly unconscious and covered in her own vomit. Appellant, who had never met LCpl Juliet prior to that day, helped carry her to her barracks room and remained with her and LCpl Alpha when the others returned to the party. After LCpl Alpha went to the bathroom for a few minutes, she returned to the room to find that Appellant had pulled down LCpl Juliet's pants and underwear and was on top of her in bed, while LCpl Juliet "grumbled," said "no," and made sounds "like she was fighting it more."[43] Based on what she observed, LCpl Alpha sent text messages to others at the party indicating that Appellant was trying to have sex with LCpl Juliet against her will. Upon arriving at the room and observing Appellant with LCpl Juliet, the others pulled him away and attacked him. Appellant then made numerous statements indicating his consciousness of guilt.

This Court is hard-pressed to envision more overwhelming direct evidence of an accused's intent to commit sexual assault than Appellant's actions of removing the pants of a highly intoxicated, extremely vulnerable near-stranger and climbing on top of her. And the circumstantial evidence demonstrating Appellant's intent (LCpl Alpha messaging for help based on her observations, the group's reaction upon seeing Appellant with LCpl Juliet, and Appellant's own statements) is equally compelling. We are thus convinced beyond a reasonable doubt of Appellant's intent to sexually assault LCpl Juliet.

This Court is therefore convinced that the evidence proves that Appellant is guilty beyond a reasonable doubt. He removed his own pants and LCpl Juliet's pants, both of which amounted to more than mere preparation and tended to effect the commission of sexual assault, and he did so with the specific intent to sexually assault LCpl Juliet.

---

[41] *See United States v. Kearns*, 73 M.J. 177, 182 (C.A.A.F. 2014); *United States v. Jones*, 32 M.J. 430, 432 (C.M.A. 1991).

[42] *Id.*

[43] R. at 1065, 1896.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and that no error materially prejudicial to Appellant's substantial rights occurred.[44]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[44] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.